EL PUEBLO DE PUERTO RICO en interés del menor H.L.V.D.J., apelante.

*Número:* O-80-27      *Resuelto:* 30 de junio de 1981

*Doris López González,* de la Corporación de Servicios Legales de Puerto Rico, abogada del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

Se confirma la resolución apelada por estar el Tribunal igualmente dividido.

El Juez Asociado Señor Díaz Cruz emitió opinión concurrente a la cual se unen los Jueces Asociados Señores Rigau, Dávila y Torres Rigual. El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García. El Juez Asociado Señor Martín disintió sin opinión.

Así lo pronunció y manda el Tribunal y certifica el Secretario.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz a la cual se unen los Jueces Asociados Señores Rigau, Dávila y Torres Rigual.

San Juan, Puerto Rico, a 30 de junio de 1981

Considerando el largo historial del joven apelante de 17 años, y el fracaso de los medios correctivos que provee la Ley de Menores, el tribunal confrontado con querellas de

asesinato, dos de robo y cuatro por infracción de la Ley de Armas convocó a vista para renunciar la jurisdicción y lo remitió a juicio como adulto según autoriza 34 L.P.R.A. sec. 2004. La Corporación de Servicios Legales alega error en su recurso porque se privó a su defendido de audiencia y asistencia legal. El planteamiento es totalmente infundado.

Un examen del expediente revela que la renuncia de jurisdicción se ajustó al debido proceso. El juez hubo de comenzar la vista en ausencia del encausado, por hallarse éste evadido del Hogar Juvenil. La abogada de Servicios Legales y la madre del menor se presentaron tarde al tribunal, y a pesar de ello el juez continuó la vista en cámara, oyó argumento, y los testimonios de alguaciles, y de la Trabajadora Social Celeste Colón, ofrecido por la defensa.[1] De hecho, el querellado tuvo una audiencia

---

[1] La Resolución apelada relata así estos procedimientos:

"Para tener una perspectiva completa de lo sucedido en la vista del caso sobre Posible Renuncia de Jurisdicción, parece útil copiar la minuta existente en autos a los efectos:

A la vista de las querellas en epígrafe no compareció el menor ni familiar alguno de éste.

El Tribunal, en base a la información suministrada por el Alguacil de Sala, Sr. Carlos De Jesús, de que el menor se encuentra evadido y luego de examinar el expediente y escuchar los testimonios ofrecidos por los Peritos que llevaron a cabo las evaluaciones, Dr. José Delgado García y Dr. Jaime Acevedo Maldonado, Sicólogo y Siquiatra, dispone resolver el caso en cámara.

Posteriormente compareció la madre del menor y en representación de éste, la Lcda. Doris López de la Corporación de Servicios Legales de Puerto Rico, Centro de Menores, Hato Rey.

Escuchadas las manifestaciones de la abogada de la defensa y escuchados los testimonios ofrecidos por los Alguaciles, Sr. Carlos De Jesús y Sr. Rafael Rodríguez Angulo y de la Sra. Celeste Colón, Trabajadora Social de la Corporación de Servicios Legales de Puerto Rico, el Tribunal se mantiene en lo dispuesto en la mañana.

El historial del menor según aparece del expediente y haciendo una relación cronológica, es como sigue:

Tanto el Sicólogo, Dr. José Delgado García, como el Siquiatra, Dr. Jaime Acevedo, que comparecieron a vista y fueron interrogados bajo juramento, coincidieron en que han evaluado al menor y éste resulta ser una persona carente de un estado de tolerancia adecuada ante situaciones que él considera frustrantes. Tiene una auto-estima sólida, gusta de las fiestas y le molesta estar sin dinero y

mucho más amplia que la exigida por *Kent* v. *United States*, 383 U.S. 541, 561 (1966): "an opportunity for a hearing which may be informal." Llegó a extremos el juez, que bien pudo proceder desde luego a la renuncia de jurisdicción considerando la ausencia tanto del evadido como de su abogada a la hora de abrir sala para la vista a la que habían sido debidamente convocados. En efecto, esta persona ha tenido más oportunidad de ser oída que la conferida por la Regla 243 de Procedimiento Criminal al acusado por delito grave que no comparece a juicio. Según la última enmienda de Ley Núm. 94 de 3 de junio, 1980 se continúa el proceso hasta *dictar sentencia* que puede ser de reclusión por vida. El fugitivo renuncia al ordenado esquema de derechos provisto en el enjuiciamiento. *Cf. Pueblo* v. *Rivera Rivera*, 110 D.P.R. 544 (1980). Los procedimientos en instancia se ajustaron a derecho y constituyen el medio adecuado de proteger la sociedad de este individuo, al presente prófugo, con libertad de continuar su inclinación según la muestra el siguiente historial:

Antes de los 12 años se inició con un escalamiento en segundo grado. Lo dejaron bajo la custodia de la madre. Luego le siguió un robo. Quedó bajo la custodia de la abuela, quien vive en Canóvanas. Le siguieron varias querellas por infracciones a la Ley de Armas. Pendientes las mismas asaltó a un *jogger* que resultó ser juez en el Centro Judicial y le arrebató unas cadenas de oro. Por estos hechos le fueron radicadas querellas por Robo y Ley de Armas. Declarada con lugar una moción de Supresión de

---

recibir órdenes. Se concluyó que posee destrezas intelectuales que le ubican dentro de una clasificación sobre promedio. No evidencia patología mental que justifique la intervención de peritos.

*El evaluado podría actuar en forma agresiva frente a una situación que él considere indeseable.* [Énfasis en el original.]

El Siquiatra, Dr. Jaime Acevedo Maldonado, testificó básicamente que 'estamos ante un adolescente que tiene una estructura de personalidad endeble en el segmento de super-ego con pocos controles internos. Sus mecanismos de fuerza para bregar en un medio ambiente amenazante es la hostilidad y agresividad'."

Evidencia fueron archivadas las querellas primeras por Ley de Armas y devuelta su custodia a la madre.

Surge de autos que a los pocos días del archivo "la propia madre del menor está solicitando detención debido a grado de deterioro de éste, peligro a la comunidad por su conducta y peligro para la propia vida de él. En la última balacera en que estuvo envuelto, contrarios al menor lo persiguieron y al refugiarse él en la casa, dispararon contra ésta. Se está envolviendo en nuevas faltas". Autos, pág. 42. El augurio se cumplió y antes del mes se le acusó de asaltar una tienda de licores y matar a su dueño. Se ordenó su ingreso al Hogar Juvenil. Luego de entrevistas e investigación el trabajador social de la institución, Tulio Larrinaga Rey, informa que "En entrevistas hechas al menor el suscribiente percibe una actitud de falta de arrepentimiento, aunque temeroso de las consecuencias de sus actos, ve las alternativas ofrecidas para su rehabilitación como un medio para salir bien parado de su situación. Al mencionar los hechos de la agresión de que fue objeto al recibir una herida de bala en el pie derecho, el menor ofrece una versión distinta a los recuentos hechos por su madre. Al confrontarle con la versión de la madre, el menor admite haber mentido al suscribiente. Admite uso de substancias controladas a nivel exploratorio. En entrevista hecha a la madre del menor se percibe a ésta como una persona de carácter libertino, despreocupado y falta de valores y controles adecuados que ofrecerle a su hijo. Al profundizar en la supervisión de ésta al menor se le percibe sobre-protectora y permisiva ante su hijo". El tribunal ordenó evaluación sicológica y siquiátrica. Al siquiatra el joven le admitió que empezó oliendo *thinner* y luego pasó a la marihuana, la heroína y las pastillas.

Cumplido el debido proceso y ante la conducta incorregible del joven que tan grave peligro representa para la sociedad, no puede haber solución más apropiada que la

renuncia de jurisdicción. La resolución apelada debe confirmarse.

—O—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 30 de junio de 1981

En *Kent* v. *United States*, 383 U.S. 541, 560 (1966), se expresó de la siguiente manera el Tribunal Supremo federal:

> Es nuestra opinión que la interpretación de la Corte de Apelaciones sobre la cuestión básica y los valores que le sirven de fundamento en este caso fue equivocada. Sí advirtió, como lo hiciera varios meses después en *Black* y *Watkins* otra sala de la misma corte, que la determinación de trasladar a un niño de la estructura estatutaria del Tribunal de Menores a los procesos criminales de la Corte de Distrito es "de una importancia crítica". Sostenemos que ciertamente es un procedimiento "de una importancia crítica". La Ley del Tribunal de Menores le confiere al niño el derecho a beneficiarse de la jurisdicción "exclusiva" de dicho tribunal. Como dijera la Corte de Apelaciones, "[E]stá implícito en el esquema [del Tribunal de Menores] que la norma ha de ser el tratamiento no-criminal, y que el tratamiento criminal como adulto ha de ser la excepción, la cual deberá regirse por los elementos particulares de cada caso".

Más adelante en la pág. 561, dijo dicho Tribunal:

> De acuerdo con esto, concluimos que el niño debe tener la oportunidad de que se celebre una vista, la cual puede ser informal antes de que se dicte la orden de renuncia [de jurisdicción]. Bajo *Black*, el niño tiene derecho a representación de abogado en procedimientos de renuncia, y bajo *Watkins* el abogado tiene derecho a examinar el expediente social del niño. Estos derechos no significan nada —son un engaño, una burla— si al abogado no se le da la oportunidad de funcionar.

El derecho a tener representación legal no es una forma-

lidad. No es un gesto hecho a regañadientes frente a un requisito ritualista. Es esencial a la justicia. Designar a un abogado y no darle la oportunidad de una vista sobre una decisión "de una importancia crítica" es equivalente a negarle al menor la representación de abogado.

Ni más ni menos, las cuestiones a que se refieren las preinsertas citas de *Kent* v. *United States*, son las que se plantean en el caso ante nos. A mi juicio la opinión concurrente se desvía del *issue* en que se centra este caso. No se trata de justificar que la División de Asuntos de Menores renuncie a su jurisdicción sobre el apelante para que sea juzgado como adulto. Ese no es el *issue*. Se trata de un aspecto puramente procesal, a saber, si hubo en este caso todas las garantías de una vista y del derecho a asistencia efectiva de abogado en una etapa crítica —*critically important* la denomina el Supremo federal— en el procedimiento como en la vida misma del apelante.

Los hechos ante nuestra consideración son los siguientes: el menor aquí apelante, de dieciséis años de edad, fue objeto de varias querellas de naturaleza grave,(1) instadas conforme al procedimiento establecido por la Ley de Menores. Ley Núm. 97 de 23 de junio de 1955 (34 L.P.R.A. secs. 2001 a 2015). Señalado el 29 de octubre de 1979 para la ventilación de los casos, compareció el menor personalmente, acompañado de su señora madre, y asistido de una abogada. El tribunal decidió *motu proprio* celebrar una vista para decidir si debía renunciar a su jurisdicción, y señaló para ello el 6 de diciembre de 1979.

El 6 de diciembre la abogada del apelante llegó al tribunal a las 9:05 de la mañana, acompañada de una trabajadora social que habría de declarar sobre un estudio social del caso, realizado por ella. Un alguacil les informó que no habían llegado el menor, su madre ni los testigos. Decidieron esperar. A las 9:45 llegó la madre del menor. Fue entonces que se informó a la abogada que el tribunal

---

(1) Se le imputó robo, asesinato y varias infracciones de la Ley de Armas.

había celebrado la vista a las 9:00 de la mañana y había decidido renunciar a su jurisdicción luego de interrogar a un siquiatra y a un sicólogo que habían comparecido.

No empece las protestas de la abogada, el tribunal se negó a permitirle contrainterrogar a los mencionados peritos, limitando la actuación de la abogada a "darle la oportunidad a la defensa de establecer su posición para el récord",[2] luego de lo cual se reafirmó el tribunal en su decisión de renunciar a su jurisdicción.

Dos disposiciones específicas, una de ley y otra de reglamento, tratan sobre el procedimiento para la renuncia de jurisdicción. La primera es el Art. 4 de la Ley, 34 L.P.R.A. sec. 2004, que dice:

> Cuando se impute a una persona mayor de 16 años de edad y menor de 18 años de edad la infracción de una ley estatal, el juez, después de investigar el caso y concluir que entender en dicho asunto bajo las disposiciones de las secs. 2001 a 2015 de este título sería contrario al bienestar del menor o de la comunidad, podrá renunciar la jurisdicción del tribunal y darle traslado para que se tramite el caso como si se tratara de un adulto, ante la Sala correspondiente del Tribunal de Primera Instancia. Ninguna resolución u orden dictada por el tribunal, o evidencia aducida en contra del menor ante este tribunal, podrá ser ofrecida ni admitida como medio de prueba en ningún otro caso civil o criminal, o en cualquier otro procedimiento judicial establecido con cualquier fin contra dicho menor.

La otra disposición es la Núm. 13.2 de las Reglas de Procedimiento para los Asuntos Cubiertos por la Ley Núm. 97 de 23 de junio de 1955 (Menores), 34 L.P.R.A., Ap. I, que expresa:

13.2 Renuncia para entender de un caso

En todos los casos en que se impute a un menor que haya cumplido dieciséis (16) años de edad y no sea mayor de dieciocho (18) años de edad la comisión u omisión de un acto

---

[2] Así se señala en el Alegato del Apelante, pág. 4, no refutado por el Procurador General.

que constituiría delito grave de incurrir en el mismo un adulto, según lo provisto en el art. 4 de la Ley [34 L.P.R.A. sec. 2004], el juez, después de investigar el caso y antes de dictar una orden renunciando a entender en el mismo, *celebrará una vista con citación, en tiempo razonable, del menor y sus padres, tutor, persona encargada o bajo cuya custodia se encuentre dicho menor y del oficial probatorio juvenil.* En la orden que dicte dando traslado del caso para que se tramite como si se tratara de un adulto, el juez consignará los fundamentos por los cuales sería contrario al bienestar del menor o de la comunidad entender en dicho asunto bajo las disposiciones de la Ley. Con la orden dando traslado del asunto se acompañarán las declaraciones, evidencia, documentos y demás información en poder del juez, excepto aquellas que de acuerdo con estas reglas sean de carácter confidencial. (Énfasis nuestro.)[3]

Se desprende de estos textos que solamente podrá renunciarse a la jurisdicción para entender en un caso bajo la Ley de Menores, (1) si se trata de un menor que haya cumplido dieciséis, pero no sea mayor de dieciocho años de edad, y, (2) si se celebra una vista con citación, en tiempo razonable, del menor y sus padres, tutor, persona encargada o bajo cuya custodia se encuentre dicho menor, y del oficial probatorio juvenil. Esa vista, sin embargo, no es *pro forma.* Persigue investigar y decidir sobre lo más conveniente desde el punto de vista del bienestar del menor y el de la comunidad. Y debe revestirse de aquellas salvaguardas del debido proceso de ley que garanticen los derechos fundamentales del menor.

En *Pueblo ex rel. L.V.C.,* 110 D.P.R. 114, 124–125

---

[3] Del texto de esta Regla 13.2 se desprende que uno de los requisitos para renunciar a la jurisdicción sobre un menor es la comisión u omisión de un acto que constituiría delito grave de incurrir en el mismo un adulto.

No obstante, la Sec. 2004 de la Ley de Menores fue enmendada en 1964 para eliminar dicho requisito. Aparentemente por error en dicha ocasión se omitió enmendar la Regla 13.2 que implementa la renuncia de jurisdicción. Debe prevalecer, sin embargo, la intención de la Ley según enmendada en 1964, lo cual incluiría la posibilidad de renunciar a la jurisdicción en casos de delitos menos graves.

(1980), expresamos que "en estos procedimientos el 'niño' puede reclamar aquellas garantías constitucionales que le aseguren 'un trato justo' y un debido proceso de ley". Este principio había sido reconocido en *ELA en Interés R.M.R.*, 83 D.P.R. 242, 247 (1961). La Constitución del Estado Libre Asociado reconoce como uno de los derechos fundamentales del ser humano, el derecho a la libertad, y dispone que "[n]inguna persona será privada de su libertad . . . sin debido proceso de ley. . .". Art. II, Sec. 7. Si bien el procedimiento bajo la Ley de Menores no es de naturaleza criminal, (⁴) su implementación desemboca en muchas ocasiones en la privación efectiva de la libertad del menor. Las garantías de "trato justo" y "debido proceso de ley" a que nos referimos en los citados casos de *L.V.C.* y *R.M.R.* van dirigidos a darle eficacia al pronunciamiento constitucional aludido. Ese "trato justo" y "debido proceso de ley" no existirían si el menor sometido al procedimiento tutelar de la Ley de Menores no gozase de ciertos derechos fundamentales de que gozan los imputados de delito en los procedimientos criminales, recogidos en el Art. II, Sec. 11 de la Constitución. (⁵) Véase *Pueblo ex rel. L.V.C.* ya citado,

---

(⁴) Art. II, Ley de Menores, 34 L.P.R.A. sec. 2011; *Pueblo ex rel. L.V.C.*, supra; *R.A.M.* v. *Tribunal Superior*, 102 D.P.R. 270, 273 (1974).

(⁵) Dice así:

"En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.

En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.

Nadie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.

Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito.

Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.

La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas. Nadie será encarcelado por deuda."

y la jurisprudencia a que allí nos referimos, en su parte III B.

La decisión sobre si un menor ha de ser juzgado conforme a la Ley de Menores o como adulto bajo el procedimiento criminal ordinario plantea, según vimos en la cita de *Kent* v. *United States*, supra, una cuestión de "importancia crítica" en el procedimiento, y no debe soslayarse porque el menor no se presente o porque su abogado llegue tarde. Un menor no deja de serlo porque se halle evadido del lugar en que ha sido colocado. La tardanza de la abogada, si bien es censurable, no debió militar contra el derecho de este menor a cuestionar efectivamente la medida que el tribunal se disponía a adoptar. El menor tenía derecho a estar representado por abogado en las etapas conducentes a la renuncia de jurisdicción y, por medio de su abogado, oír los testimonios de los peritos interrogados por el tribunal, repreguntarles, y ofrecer los testimonios que tuviere en apoyo de su contención de que debía ser juzgado y tratado conforme al procedimiento especial de menores. El derecho a confrontarse con y a contrainterrogar a los peritos examinados por el tribunal de instancia se vulneró en este caso en esta etapa crítica del procedimiento, violándose con ello las salvaguardas constitucionales de un debido proceso de ley.

Los derechos reconocidos en *Kent* v. *United States*, antes citado, son obligatorios como parte del debido proceso de ley exigido por la Constitución federal. Véase *In re Gault*, 387 U.S. 1 (1967). En palabras del Tribunal Supremo federal, "neither the *Fourteenth Amendment nor* the Bill of Rights is for adults alone". (Énfasis nuestro.) *In re Gault*, pág. 13. Se dijo en *Kent* que la vista puede ser informal. Pero una vista informal no es una vista *pro forma*.

Por las razones expresadas, revocaría la resolución recurrida y dispondría que el tribunal de instancia celebre una vista, previa oportuna citación del apelante, en que

pueda éste, por medio de su abogada, escuchar y repreguntar a los testigos examinados por el tribunal y presentar pruebas contra la pretensión de renunciar a la jurisdicción bajo la Ley de Menores, antes de resolver si conviene a los intereses del menor y de la comunidad que éste sea juzgado como adulto.