CC-97-138                                                              1

En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>    Recurrido<br><br>    V.<br><br>José R. Esquilín Díaz<br>    Acusado–Peticionario | Certiorari<br><br>98TSPR138 |

Número del Caso: CC-97-138

Abogada de José R. Esquilín Díaz:  Lcda. Ivette Aponte Nogueras

Abogados de la Parte Recurrida:    Hon. Carlos Lugo Fiol
                                   Procurador General

                                   Lcdo. Ricardo E. Alegría Pons
                                   Procurador General Auxiliar

Tribunal de Instancia: Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Igri Rivera de Martínez

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Liana Fiol Matta

Fecha: 10/20/1998

Materia: Asesinato en Primer Grado

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

  Recurrido

  v.

                                   CC-97-138        Certiorari

José R. Esquilín Díaz

  Acusado-Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Federico Hernández Denton

En San Juan, Puerto Rico, a 20 de octubre de 1998.

El señor Esquilín Díaz nos solicita que revisemos una Resolución del Tribunal de Circuito de Apelaciones que denegó la reinstalación de su apelación. Dicho foro desestimó su apelación por encontrarse el señor Esquilín Díaz, en ese momento, prófugo de la justicia. El tribunal apelativo estimó que a la luz de la jurisprudencia aplicable, un acusado que se evade antes de que termine el procedimiento en su contra, y que continúa evadido una vez convicto, no tiene derecho a apelar su convicción. Por entender que el Tribunal de Circuito de Apelaciones aplicó la norma correcta a los hechos particulares de este caso, y que el Sr. Esquilín

Díaz no tiene derecho a que una vez capturado se reinstale su apelación, confirmamos.

I

El Sr. Esquilín Díaz fue acusado el 12 de julio de 1993 de asesinato en primer grado, dos tentativas de asesinato y violaciones a los Arts. 5, 6A, 8 y 8A de la Ley de Armas. El 15 de julio de 1993 compareció con su abogado al Acto de Lectura de Acusación y solicitó término para alegar. El tribunal le concedió diez días para someter su alegación y le advirtió que de transcurrir dicho periodo sin registrarse alegación alguna, se registraría una alegación de no culpable y una solicitud de juicio por jurado. Se le citó para el 23 de agosto de 1993 y se le apercibió que de no presentarse a juicio, podrían continuarse, en su ausencia, los procedimientos en su contra, incluyendo la selección de jurado, el juicio y el pronunciamiento de sentencia. El 12 de agosto el tribunal declaró con lugar una solicitud de habeas corpus y ordenó su excarcelación por haber excedido de seis meses su reclusión.

Tras varios incidentes procesales se señaló una vista para el 2 de noviembre de 1993, a la cual Esquilín Díaz no compareció. Su representación legal estuvo presente. El tribunal ordenó su arresto por desacato y le impuso una fianza de $100,000.00. El 20 de diciembre tampoco compareció a una vista de supresión de evidencia. Dicha vista se trasladó para el 24 de febrero de 1994 y se ordenó buscarlo en las cárceles y los hospitales. El 26 de abril el tribunal lo declaró prófugo y le impuso una fianza de $1,000,000.00.

El tribunal decidió ver el juicio en ausencia y procedió a la desinsaculación del jurado y al desfile de prueba. El jurado emitió un veredicto de culpabilidad en todos los cargos, excepto en la violación a los Artículos 5 y 8A de la Ley de Armas. El tribunal emitió la correspondiente sentencia, el 28 de febrero de 1995.

El 14 de marzo, la representación legal de Esquilín Díaz, presentó un recurso de apelación en el Tribunal de Circuito de Apelaciones,

haciendo una reserva del derecho a apelar, por si en algún momento Esquilín Díaz reingresaba a la cárcel. El 7 de junio de 1995 el tribunal apelativo dictó sentencia y desestimó la apelación. Resolvió que al convertirse en prófugo de la justicia, Esquilín Díaz renunció a las salvaguardas y garantías que ofrece nuestro sistema de justicia criminal, según la norma pautada en *Pueblo v. Rivera Rivera*, 110 D.P.R. 544 (1980).

El 29 de agosto de 1995, Esquilín Díaz, una vez capturado, solicitó reinstalación de su apelación sobre la base de la reserva de derecho presentada por su abogada. Dicha solicitud fue denegada por el tribunal apelativo. Determinó que al amparo de la jurisprudencia local y federal aplicable, no cabe invocar una reserva del derecho a apelar, puesto que la condición de prófugo equivale a una renuncia del derecho de apelación. De esta negativa recurre ante nos.

## II

Tanto en la jurisdicción federal como en la nuestra, el derecho a apelar una convicción criminal es esencialmente de naturaleza estatutaria.[1]

En *McKane v. Durnston*, 153 U.S. 684 (1894), el Tribunal Supremo de los Estados Unidos, resolvió que, no importa la gravedad de la ofensa, un acusado convicto no tiene un derecho constitucional a apelar su convicción. Fundamentó dicha conclusión en el hecho de que la revisión de una convicción por un tribunal apelativo no es un elemento necesario del debido proceso de ley. *Id*. a la pág. 687. Dictaminó además, que el derecho a una apelación, y la determinación de aquellas circunstancias y condiciones bajo las cuales procedería, es materia que compete a cada estado.[2] Dichos pronunciamientos han sido reiterados en *Jones v.*

---

[1] En la jurisdicción federal las Reglas 3 y 4(b) de los Federal Apellate Rules of Procedure regulan el proceso apelativo en casos criminales. En nuestra jurisdicción las Reglas 193 a 227 de Procedimiento Criminal regulan el recurso de apelación.

[2] Algunos estados han elevado a rango constitucional el derecho a apelar una convicción criminal. La mayoría, sin embargo, lo reconoce como un derecho estatutario. Cabe señalarse que aun en aquellos estados en que se reconoce el derecho a apelación como uno garantizado por la

*Barnes*, 463 U.S. 745 (1983); *Ross v. Moffit*, 417 U.S. 600 (1974*); Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989); *Whitmore v. Arkansas,* 110 S. Ct. 1717 (1990).

Sin embargo, la jurisprudencia federal ha reconocido que una vez el estado confiere a un acusado convicto un derecho estatutario a apelación, dicho derecho no puede condicionarse de  modo que viole la cláusula de igual protección de las leyes de la constitución federal. Así, una vez el derecho positivo estatal o federal, reconoce a un convicto el derecho a apelar, no puede condicionarse tal derecho con requisitos económicos que lo pongan fueran del alcance de un indigente. *Griffin v. Illinois*, 351 U.S. 12 (1956).[3] En aquellos casos en que el derecho positivo aplicable provee para una primera apelación como cuestión de derecho, el acusado convicto indigente tiene un derecho de rango constitucional, a que se le nombre un abogado de oficio para esa primera apelación. *Douglas v. California*, 372 U.S. 353 (1963).  El derecho a representación legal para esa primera apelación por derecho, conlleva que la asistencia de abogado sea una adecuada, según los parámetros del derecho a asistencia de abogado consagrado en la enmienda sexta. *Evitts v. Lucey*, 469 U.S. 387 (1984).  Sin embargo, el derecho a asistencia de abogado no se extiende más allá de la primera apelación en derecho, ni a recursos discrecionales. *Ross v. Moffit*, 417 U.S. 600 (1974).

Nuestra jurisdicción ha seguido los parámetros de la jurisprudencia federal.   En *Pueblo v. Serbia*, 78 D.P.R. 788 (1955) determinamos que:

> Generalmente el derecho de apelación no es un derecho
> constitucional en el sentido de no haber sido incluido
> específicamente como uno de los derechos inalienables dentro
> de la constitución.  Es cierto que tan pronto el  derecho a
> apelación se incorpora a un sistema de justicia pública, por

---

constitución estatal, los tribunales han reconocido como válida la renuncia de tal derecho. *State v. Perkins*, 737 P.2d. 250 (Wash. 1987); *People v. Fearing*, 442 N.E.2d 941 (Ill. App. 1982).
[3] Resolvió que cuando la reglamentación del derecho a apelar requiere la presentación de un récord o transcripción, el Estado debe proveer dicho récord libre de costo en los casos de indigentes.

> *acción legislativa, entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional [citas omitidas], pero no es menos cierto, que tratándose de un derecho que inicialmente es estatutario, la Legislatura tiene el derecho de prescribir la forma en que se ha de apelar.* Id. a la pág. 792.

Esta categoría cuasi constitucional del derecho a apelación garantiza, al igual que en la jurisdicción federal, que en aquellos casos en que el derecho a apelar se ha concedido, no se prive de él al acusado convicto de una manera arbitraria, irrazonable, discriminatoria o que viole las garantías constitucionales del debido proceso de ley e igual protección de las leyes. Así por ejemplo hemos reconocido que la representación legal en la etapa apelativa debe ser adecuada y efectiva. *Pueblo v. Ortiz Couvertier*, Opinión del Tribunal de 9 de marzo de 1993.

El derecho a apelación no existe como un derecho constitucional, es un privilegio estatutario que está disponible para aquellos que cumplen con los requisitos dispuestos en las leyes y reglas que lo regulan. No viola el debido proceso de ley un estado que de acuerdo a su reglamentación apelativa, desestima la apelación de un convicto fugitivo, y rehusa reinstalar dicha apelación una vez el fugitivo convicto es capturado. *Estelle v. Dorrough*, 420 U.S. 534 (1975).

Aclarada la naturaleza y el alcance del derecho a apelación, nos corresponde examinar la norma vigente respecto al derecho a apelación de un convicto, fugitivo al momento de instar la apelación.

### III

La norma general, tanto en la jurisdicción federal como en la nuestra, respecto a un convicto que es fugitivo de la justicia durante el tiempo que está pendiente su apelación, es que procede desestimar dicha apelación. Las razones para esta norma son varias y las mismas han sido articuladas y esclarecidas por la jurisprudencia. Smith v. U.S., 94 U.S. 97 (1876); Bonahan v. Nebraska, 125 U.S. 692 (1887); Eisler v. U.S., 338 U.S. 189 (1949); Molinaro v. New Jersey, 396 U.S. 365 (1970); Estelle v. Dorrough, 420 U.S. 534 (1975); State v. Holmes,

680 F. 2d. 1372 (1982), Ortega Rodríguez v. U.S., 507 U.S. 234 (1993); Pueblo v. Rivera Rivera , 110 D.P.R. 544 (1980).

En Smith, *supra*, se desestimó la apelación de un convicto apelante que estaba prófugo al momento que le tocó el turno a su apelación. Razonó el Tribunal Supremo de los Estados Unidos que en el interés de proteger la autoridad de los tribunales apelativos procedía la desestimación de la apelación. La norma pautada se basó en la teoría de la ejecutabilidad o cumplimiento. Al estar evadido el convicto apelante, éste no puede ser compelido a cumplir la sentencia de ésta confirmarse, ni a que comparezca a un nuevo juicio de revocarse la misma. Por lo tanto, cualquier decisión del tribunal apelativo sería futil.

En Molinaro, *supra,* el Tribunal entendió que además de las razones anteriores, la fuga de un convicto lo priva del derecho a valerse de que un tribunal apelativo adjudique su reclamo. Se basó en la doctrina de la descalificación o privación de derecho. Consideró que al evadirse de la jurisdicción, el convicto prófugo en efecto renunciaba a su derecho estatutario a apelar.

En Estelle, *supra,* se validó un estatuto que autorizaba la desestimación automática de cualquier apelación instada mientras el convicto estuviese evadido. El Tribunal Supremo razonó que dicho estatuto desalentaba las fugas, propiciaba la entrega voluntaria de los prófugos y promovía un funcionamiento digno y eficiente de los tribunales apelativos.

En Holmes, *supra,* el Undécimo Circuito resolvió que por ser el derecho a apelar uno estatutario el mismo se renuncia al no presentar la apelación a tiempo o por abandono del mismo al darse a la fuga, y que la norma de Molinaro aplica independientemente de que la fuga ocurra antes o después de la convicción. Tomó en consideración que la fuga del convicto representa un desafío a la integridad del sistema de justicia, impone una demora al calendario de los tribunales apelativos, y que dicha demora pone en desventaja al Estado, en cuanto a

disponibilidad de testigos y evidencia, en aquellos casos en que se ordene un nuevo juicio.

En 1993 en Ortega Rodríguez,[4] *supra*, el Tribunal Supremo creó una excepción a la norma general pautada en Smith y su progenie. Los hechos en Ortega son muy particulares y claramente determinantes para entender la excepción pautada. Ortega fue uno de tres acusados de posesión, con intención de distribuir narcóticos. Los tres acusados fueron convictos y antes de dictarse sentencia Ortega escapó. La corte de distrito ordenó su arresto. Fue sentenciado en ausencia a cumplir diecinueve años de prisión. Los otros dos coacusados apelaron sus sentencias pero **no se radicó apelación alguna a nombre de Ortega.** Once meses más tarde Ortega fue capturado.

Una vez Ortega capturado, y estando todavía bajo la custodia de la corte de distrito, la corte de apelaciones dispuso de la apelación de los otros dos coacusados. Confirmó la convicción de uno, y revocó la del otro por insuficiencia de prueba. El abogado de Ortega presentó entonces, ante la corte de distrito, una moción de resentencia, y otra moción para un fallo absolutorio. La corte de distrito negó la moción absolutoria pero acogió la moción para dejar sin efecto la sentencia dictada. Procedió entonces a resentenciar a Ortega y le impuso una pena de quince años. Además Ortega fue encontrado culpable de desacato y de no comparecer al acto de sentencia, y la pena por estos cargos fue impuesta a ser cumplida consecutivamente con las sentencias por los cargos de drogas.

---

[4] La propia Opinión en Ortega reconoce lo *sui generis* de los hechos de este caso. En la nota al calce 9 aclara:
This sequence of events makes petitioner's case somewhat unusual. **Had the District Court denied petition for resentencing, petitioner would have been barred by applicable time limits from appealing his initial sentence and judgement. Entry on the second sentence and judgement, from which petitioner noticed his appeal, is treated as the relevant "sentencing" for purposes of this opinion.** We have no occasion here to comment on the propriety of either the District Court's initial decision to sentence in absentia or its subsequent decision to resentence. Ortega, *supra.*

Ortega presentó entonces, **en tiempo, una apelación al fallo final, es decir de la resentencia.** Alegó que debía aplicarse a su caso la misma norma de insuficiencia de prueba que en el caso de su coacusado absuelto. El tribunal de apelaciones desestimó la apelación bajo la norma de <u>Holmes</u>, *supra*, por considerar que el apelante se convirtió en prófugo luego de la convicción y antes de la apelación, por lo cual había renunciado a su derecho a apelar.

El Tribunal Supremo de los Estados Unidos revocó y determinó que **en aquellos casos en que tanto la fuga como la captura del prófugo ocurran antes de invocar el proceso apelativo,** el status de fugitivo del apelante puede no tener la suficiente conexión con el proceso apelativo como para justificar una desestimación automática de la apelación. <u>Ortega</u>, *supra* a la pág. 251. **Cuando la fuga y el retorno del prófugo, ya sea voluntariamente o debido a su captura, ocurren mientras el caso está pendiente en el tribunal inferior,** la sanción debe ser impuesta por el tribunal inferior.

El Tribunal en Ortega hizo claro que la nueva norma pautada **aplica sólo en aquellos casos en que el convicto se da a la fuga estando bajo la jurisdicción de la corte inferior y es capturado o regresa voluntariamente antes de invocar la jurisdicción del tribunal apelativo.** Razonó que en estos casos, **en que tanto la fuga como la captura** ocurren estando los casos pendientes bajo la jurisdicción de la corte inferior, **y en las cuales el exprófugo apelante insta a tiempo la apelación,** puede que no exista la suficiente conexión entre la fuga y el proceso apelativo que conlleve la desestimación de la apelación. La razón para esta norma es que si el convicto prófugo **es capturado o regresa voluntariamente antes de instar la apelación** ya no existe problema en cuanto a la ejecutabilidad o cumplimiento del fallo apelativo, pues el convicto está bajo la jurisdicción del tribunal apelativo al momento de instar y durante el proceso de apelación y fallo. <u>Ortega</u>, *supra* a la pág. 244.

La norma de Ortega no aplica a los hechos ante nos. Esquilín Díaz **invocó, mediante la reserva hecha por su abogado, la jurisdicción del tribunal apelativo estando todavía prófugo de la justicia.** Tanto es así, **que el tribunal apelativo dictó sentencia y desestimó la apelación estando Esquilín Díaz todavía prófugo.** La captura de Esquilín Díaz no ocurrió, como en el caso de Ortega, estando todavía bajo la jurisdicción del tribunal de instancia y antes de invocar la jurisdicción del tribunal apelativo.

La pretensión de Esquilín Díaz, de que se le restituya automáticamente su derecho a apelación por haber sido capturado y encontrarse bajo la jurisdicción de los tribunales, sentaría un precedente peligroso. El señor Esquilín Díaz evadió la jurisdicción de los tribunales desde el comienzo de los procedimientos instados en su contra. **Al presentarse la reserva de derecho a apelación por su abogada todavía estaba evadido y se desconocía su paradero.** No se entregó voluntariamente a las autoridades. Si no hubiese sido capturado al cabo de siete meses, nada hubiese hecho acerca de su apelación.

En este caso particular existe la suficiente conexión entre la fuga de Esquilín Díaz y el proceso apelativo, como para ameritar que se desestime su apelación. Aunque es cierto que advino prófugo estando bajo la jurisdicción del tribunal de instancia, mantenía su condición de prófugo en el momento en que su abogada, para evitar que pasara el término jurisdiccional para apelar, presentó una reserva de derecho de apelación ante el tribunal apelativo. Al presentar dicho escrito, su abogada invocó la jurisdicción del tribunal apelativo. Desde ese momento existe la suficiente conexión entre la condición de prófugo de Esquilín Díaz y la autoridad del tribunal apelativo

Nada hay en los autos que justifique que el tribunal apelativo acoja el recurso de apelación de Esquilín Díaz. Por un lado, si reconocemos la alegada reserva del derecho a apelar hecha por su abogada, nos encontramos con que a la fecha de invocar la jurisdicción

del tribunal apelativo, Esquilín Díaz estaba prófugo, lo cual automáticamente lo coloca fuera de la excepción de Ortega y bajo la norma general de Smith y su progenie. Por otro lado si aceptamos la conclusión a que llegó el tribunal apelativo de que no existe en nuestro ordenamiento la alegada reserva de derecho de apelación hecha por la abogada de Esquilín Díaz, nos encontramos que al momento de ser capturado Esquilín Díaz, ya había transcurrido el término jurisdiccional provisto en ley para radicar su apelación.

Reiteramos que para que aplique la excepción de Ortega **es necesario que el convicto sea capturado o regrese voluntariamente antes de vencerse el término apelativo jurisdiccional y antes de presentar su apelación.** Es sólo en esta situación, en que la captura o el regreso voluntario ocurren estando todavía bajo la jurisdicción del tribunal de instancia, en que puede decirse que dicha fuga carece de la suficiente conexión con el proceso apelativo, y que procedería bajo la norma de Ortega no desestimar su apelación, siempre y cuando la radique dentro del término jurisdiccional pautado.

V

Nos corresponde ahora examinar si amerita hacerse una excepción a la norma vigente sobre el derecho a apelación de un fugitivo convicto, por el mero hecho de que Esquilín Díaz se evadió antes del comienzo del juicio, y se celebró el juicio en su ausencia, con la asistencia de su representación legal. Para llegar a una determinación es necesario examinar si en el juicio celebrado se le ofrecieron a Esquilín Díaz las salvaguardas procesales que nuestro ordenamiento provee para garantizar el derecho a un debido proceso de ley, en la celebración de un juicio del cual voluntariamente se ausentó.

La celebración de un juicio en ausencia está debidamente atendida y regulada, y su constitucionalidad ha sido validada, tanto en nuestro ordenamiento como en el federal. *Díaz v. United States*, 223 U.S. 442 (1912); *Illinois v. Allen*, 397 US 377 (1970); *Taylor v. United States*, 414 U.S. 17 (1973); *Pueblo v. Pedroza Muriel*, 98 D.P.R. 34

(1969). En nuestro ordenamiento dicha situación está contemplada en las Reglas 58(b) y 243(a) de Procedimiento Criminal.

La Regla 58(b) de Procedimiento Criminal ordena que en el acto de lectura de la acusación, el tribunal señale la fecha del juicio y aperciba al acusado que de no comparecer podrá celebrarse el juicio en su ausencia. La incomparecencia voluntaria equivaldrá a una renuncia a estar presente en el proceso. La Regla 58 debe leerse en conjunción con la Regla 243(a) la cual se refiere a la celebración del juicio sin la presencia del acusado, cuando éste no comparece a pesar de haber sido apercibido por el tribunal en el acto de lectura de la acusación, de acuerdo a la Regla 58(b).

No hay duda de que el derecho del acusado a estar presente en el juicio es una exigencia del debido proceso de ley. Sin embargo, tanto el Tribunal Supremo federal como nuestro Foro, han validado la renuncia implícita del derecho de un acusado a estar presente en el juicio cuando, debidamente citado y apercibido según lo dispuesto en la Regla 58(b) de Procedimiento Criminal, se ausenta del juicio sin justificación alguna. La razón para esta norma es que de otro modo los acusados estarían en libertad de obstruir la celebración de los juicios ocultándose o haciendo imposible su localización. *Pueblo v. Pedroza Muriel*, supra; *Pueblo v. Ortiz*, 57 D.P.R. 469 (1940).

Nuestro ordenamiento provee a través de la Regla 243(a) una serie de mecanismos para salvaguardar los derechos del acusado en un juicio en ausencia. En primer lugar, se requiere que el tribunal investigue sobre las causas de ausencia del acusado. Si la ausencia es involuntaria, o se debe a fuerza mayor, no puede celebrarse el juicio en ausencia. En segundo lugar, se requiere que el acusado esté representado por abogado durante todo el juicio en ausencia. Atendidos estos dos requerimientos se considera que ha quedado debidamente salvaguardado el debido proceso de ley del acusado que voluntariamente se ausenta de su juicio.

La norma general de que un convicto fugitivo de la justicia al momento de instar su apelación, pierde su derecho a apelar, está basada en varias consideraciones de índole procesal y sustantivo. Entre ellas se destacan la imposibilidad de ejecutar el mandato del tribunal apelativo, la determinación de que la fuga equivale a una renuncia del derecho a apelar, el deseo de desalentar las fugas, y la necesidad de mantener un funcionamiento eficiente de los tribunales apelativos. Al aplicar dicha norma la jurisprudencia federal ha rehusado hacer distinciones basadas en el momento en que ocurre la fuga. La única distinción es la pautada en <u>Ortega Rodríguez</u>, **basada en el momento en que el convicto regresa a la jurisdicción del tribunal.**

Es dentro de la normativa anteriormente esbozada que debe de examinarse si el hecho de desestimar la apelación de una convicción dictada tras un juicio en ausencia, cuando el convicto continua evadido de la jurisdicción al momento de instar la apelación, representa una violación a su debido proceso de ley. Opinamos que dicha violación no se configura.

Configurar automáticamente una violación al debido proceso de ley, en aquellos casos en que se desestima la apelación de un convicto que fue juzgado en ausencia y permanece evadido al momento de presentar su apelación, haría caso omiso del hecho de que el convicto fue debidamente apercibido sobre el efecto de su ausencia, se investigó si su ausencia era o no voluntaria y fue representado por su abogado, lo cual salvaguarda el debido proceso de ley. Además daría al traste con la normativa y el esquema procesal de las Reglas 58(b) y 243(a) de Procedimiento Criminal al determinar que dicho tipo de juicio, automáticamente viola el debido proceso de ley del convicto, cuando no es revisable por un tribunal apelativo.

Una vez hemos reconocido estatutaria y jurisprudencialmente la necesidad y la validez constitucional de celebrar un juicio en ausencia, en el cual se hayan salvaguardado los derechos del acusado cumpliendo con los requisitos de la Regla 58(b) y 243 (a) de

Procedimiento Criminal, y habiendo dictaminado que dicho juicio no viola el debido proceso de ley, debe aplicarse la misma norma tanto al convicto que se fuga antes del juicio como el que se fuga post juicio. No se sostiene hacer una distinción entre aquellos casos en que la fuga ocurre antes o durante el transcurso del juicio, y aquellos en la fuga ocurre terminado el juicio pero antes de instar la apelación. No se amerita, ni es conveniente, dar un trato diferente y preferencial respecto al derecho a apelación, basado exclusivamente en la ausencia o presencia del acusado en el juicio.

Reconocemos que en ambos casos, tanto en los juicios en ausencia, como en los juicios en los que el acusado está presente, pueden cometerse errores que puedan ameritar la consideración de un tribunal apelativo. El denegar la apelación cierra la puerta a la consideración de dichos errores. Sin embargo, somos de la opinión que una vez el convicto se evade de la jurisdicción y permanece evadido al momento de instar la apelación, debe considerarse que ha renunciado al derecho de que un tribunal apelativo considere sus planteamientos de error. La norma debe aplicarse por igual a todos los casos en que el convicto evadido no está presente al momento de presentar su apelación.

Adoptar otra posición crearía una situación inmanejable. Para comenzar se requeriría determinar qué ha de considerarse un juicio en ausencia. ¿Cuándo debe ocurrir la fuga para que el convicto se beneficie de esta trato diferente? ¿Debe ser antes del inicio del juicio, o antes de que el fiscal desfile la prueba, o basta que sea antes del turno de la defensa? Bajo esta normativa le convendría al convicto fugarse lo antes posible. ¿Por qué esperar hasta que haya transcurrido el juicio y perder el derecho a apelación si se me garantiza dicho derecho de fugarme antes? Una última consideración, ¿cuándo debería regresar el convicto evadido para que se le reinstale su derecho a apelar? ¿Dentro de seis meses, un año, cinco, diez? Si el criterio rector ha de ser la violación del debido proceso de ley del

convicto porque su convicción fue mediante un juicio en ausencia, dicha apelación tendría que ser acogida no importa el tiempo transcurrido.

En conclusión, el derecho a apelación es uno de rango estatutario y la ausencia voluntaria durante el proceso apelativo equivale a una renuncia del mismo. El hecho de que el juicio, fallo y sentencia se celebren en ausencia del convicto, debido a su ausencia voluntaria, no violenta los derechos constitucionales que asisten al acusado, siempre y cuando haya sido debidamente apercibido en el acto de lectura de la acusación y haya sido representado por su abogado. Pautar que automáticamente tiene derecho a apelar, cuando regrese o sea capturado, no importa el tiempo transcurrido, simplemente porque su abogado le reservó dicho derecho, establecería un estado de derecho peligroso e inmanejable. Su efecto sería premiar la evasión del convicto y dejar en manos del prófugo la capacidad de unilateralmente determinar cuándo es que ha de atenderse su apelación. Se le otorgaría al prófugo apelante el poder de obstruir el proceso apelativo, hasta que a su discreción decida regresar, o sea capturado.

Ante lo anteriormente esbozado es forzoso concluir que el hecho de que Esquilín Díaz se haya fugado tras el acto de lectura de la acusación y antes de la celebración del juicio no tiene, ni debe tener, incidencia sobre su renuncia implícita al derecho a apelar, la cual se configuró por estar evadido al momento de instar su apelación.

Por las razones anteriormente esbozadas se confirma la decisión del Tribunal de Circuito de Apelaciones que denegó la reinstalación de la apelación del Sr. Esquilín Díaz.

Se dictará la sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

CC-97-138

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

  Recurrido

    v.                        CC-97-138     Certiorari

José R. Esquilín Díaz

  Acusado-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de octubre de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma la sentencia dictada por el Tribunal de Circuito de Apelaciones que denegó la reinstalación de la apelación instada por el Sr. Esquilín Díaz.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión Disidente, a la cual se unieron el Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

CC-97-138

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

          v.              CC-97-138    Certiorari

José R. Esquilín Díaz

    Acusado-Peticionario

Opinión Disidente del Juez Asociado señor Negrón García a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López

San Juan, Puerto Rico, a 20 de octubre de 1998

I

**Con toda deferencia**, **la mayoría violenta fragantemente el debido proceso de ley de José R. Esquilín Díaz. Primero**, ignora la esencia y dinámica de la Regla 58 de Procedimiento Criminal y cierra **permanentemente** las puertas apelativas a todo convicto en un **juicio en ausencia**.

**Segundo**, olvida que en un **juicio de esa naturaleza**, el acusado por conducto de su abogado tiene derecho a interponer defensas, seleccionar el jurado, contrainterrogar los testigos de cargo, exigir las declaraciones, objetar prueba inadmisible, citar compulsoriamente y presentar testigos y prueba documental a su favor. Aun así,

resuelve que una vez convicto y sentenciado, **cesan todos sus derechos civiles, esto es, pierde automáticamente la asistencia de abogado, y le niegan la oportunidad de apelar. Tercero,** al negarle el derecho de apelación, imposibilita que pueda evaluarse, ante el Tribunal de Circuito de Apelaciones, cualquier error procesal, evidenciario o sustantivo. **Cuarto,** hace del **juicio en ausencia** uno **pro forma,** pues independientemente de los errores que puedan haberse cometido, convierte la sentencia en **final, firme e inapelable.**

**Quinto,** la mayoría malinterpreta la jurisprudencia federal y erróneamente concluye que existe "suficiente conexión entre la fuga de Esquilín Díaz y el proceso apelativo". (Opinión del Tribunal, pág. 12). ¿Cuál? Esa conclusión desatiende la realidad procesal de que Esquilín Díaz se convirtió en prófugo **antes del juicio** celebrado en el Tribunal de Primera Instancia, Sala Superior de San Juan. Pasa por alto que en virtud de las reglas de procedimiento criminal vigentes, estuvo asistido de abogado todo el tiempo y su convicción y sentencia fue resultado de un **juicio en ausencia. Su fuga fue anterior. No tuvo relación alguna con el proceso apelativo. La presentación en tiempo del escrito de apelación por su abogada, es la culminación lógica de ese proceso en ausencia y, Esquilín Díaz es acreedor a que se reinstale su apelación.**

Por su **incomparecencia,** Esquilín Díaz fue convicto y sentenciado **en un juicio en ausencia** de asesinato en primer grado, dos tentativas de asesinato y varias infracciones a la Ley de Armas. También declarado culpable y sentenciado por desacato.[5] **¿Porqué además castigarlo negándole el derecho de apelación?** Elaboremos.

---

[5] El 12 de julio de 1993, el Ministerio Público lo acusó de asesinato en primer grado, dos tentativas de asesinato y violaciones a los Arts. 5, 6A, 8 y 8A de la Ley de Armas. Tres días después, compareció con su abogado a la Lectura de Acusación y solicitó término para alegar. El Tribunal le advirtió que de no hacerlo en diez (10) días registraría alegación de no culpable y solicitud de juicio por jurado. Además, **le apercibió que en su ausencia podrían continuarse los procedimientos, la selección de jurado, juicio y pronunciamiento de sentencia.** Lo citó para el 23 de agosto de 1993. En el ínterin, el 12 de agosto, el Tribunal declaró con lugar una solicitud de <u>habeas corpus</u> fundado en que su reclusión excedió los seis meses y ordenó su excarcelación.

II

Nuestra Regla 58 de Procedimiento Criminal, según enmendada, estableció el trámite de **juicio en ausencia**. Impone a los Jueces el deber de advertir a todo acusado, en el acto de lectura de acusación, que de no comparecer "podr[á] celebrarse el juicio en [su] ausencia, incluyendo la selección del jurado y de todas las otras etapas hasta el veredicto o fallo y el pronunciamiento de la sentencia y que su incomparecencia voluntaria equivaldr[á] a una renuncia a estar presente en estas etapas del proceso." Aunque renunciable el derecho de todo acusado a estar presente durante el juicio, la Regla 243 exige que en casos de delitos

---

Luego de varios trámites procesales, señaló la vista para el 2 de noviembre. Por vez primera, Esquilín Díaz no compareció, aunque sí su abogada. **El Tribunal ordenó su arresto por desacato e impuso fianza de $100,000.00.** El 20 de diciembre no asistió a la vista sobre supresión de evidencia. El Tribunal la trasladó para el 21 de febrero de 1994 y ordenó buscarlo en las cárceles y hospitales del país. En febrero 22, tampoco compareció y se fijó la vista para el 26 de abril debido a que el 29 de octubre de 1993, mediante Resolución, paralizamos los procedimientos en instancia, en el caso Pueblo v. Alexis Rosario Allende, CE-93-645, –uno de los co-acusados–, y el Ministerio Público no deseaba separar los casos. El 26 de abril, el Tribunal lo declaró prófugo de la justicia e impuso una fianza de $1,000,000.00.

Una vez comprobado que no estaba recluido en una institución penal ni hospitalaria, el Tribunal decidió ver el **juicio en ausencia** y el 23 de enero de 1995 comenzó la desinsaculación del jurado. El 9 de febrero, se inició el desfile de prueba y oportunamente, previa instrucciones del jurado, éste rindió veredicto de culpabilidad, excepto en un cargo por violación al Art. 5 y otro del Art. 8A, ambos bajo la Ley de Armas. El ilustrado Tribunal Superior (Hon. Ygrí Rivera de Martínez), el 28 de febrero, lo sentenció a cumplir **consecutivamente**, noventa y nueve (99) años por el delito de asesinato en primer grado, diez (10) por cada tentativa de asesinato, diez (10) por violación al Art. 8 de la Ley de Armas, tres (3) por cada infracción al Art. 6, veinticinco (25) por cada cargo bajo los Arts. 5 y 8A, doce (12) por violación al Art. 6A y **noventa (90) días por desacato**.

El 15 de mayo, su representación legal presentó escrito de apelación ante el Tribunal de Circuito de Apelaciones. Expuso, que a pesar de no ser su abogada, hacía la reserva de derecho por si alguna vez reingresaba a la cárcel. El 7 de junio de 1995, el Tribunal de Circuito de Apelaciones (Hons. Fiol Matta, Rodríguez de Oronoz y Gierbolini) dictó Sentencia y desestimó la apelación. Con vista a la norma sentada en Pueblo v. Rivera Rivera, 110 D.P.R. 544 (1980), resolvió que "[a]l convertirse en prófugo de la justicia, [...]Esquilín Díaz renunció a las salvaguardas y garantías que le ofrece nuestro sistema de justicia criminal". Dicho foro apelativo consignó que esa decisión había sido reiterada en Pueblo ex rel H.L.V.D.J., 111 D.P.R. 532, 534 (1981); Orlando Torres Rosario v. Alcaide, res. en 24 de junio de 1993; Alberto Toro Ruiz v. Junta de Libertad Bajo Palabra, res. en 22 de julio de 1993. Recapturado, el 29 de agosto de 1995 Esquilín Díaz solicitó reinstalación de la apelación basado en la reserva de derecho. El 30 de enero de 1997, el Tribunal de Circuito de Apelaciones denegó el recurso. A solicitud de Esquilín Díaz expedimos este certiorari.

graves esté representado por abogado,[6] requisito esencial del debido proceso de ley. Pueblo v. Ortiz Tirado, 116 D.P.R. 868 (1986).

**Este esquema significa que aun en un juicio en ausencia, el acusado a través de su abogado conserva los derechos tradicionales tales como presentar defensas, intervenir en la selección del jurado, contrainterrogar los testigos, exigir la entrega de declaraciones, objetar prueba inadmisible, citar compulsoriamente y presentar testigos y prueba documental a su favor. En fin, es acreedor a todas las garantías procesales, evidenciarias y sustantivas que nuestro ordenamiento constitucional, legal y reglamentario penal ofrece.**

No es necesario mucha elucidación para concluir que las salvaguardas antes mencionadas serían menoscabadas, por no decir anuladas, sí luego de convicción y sentencia en un **juicio en ausencia**, el convicto no tuviera derecho a cuestionarlas en apelación a través del abogado que lo representó u otro seleccionado o asignado al respecto. Ciertamente, bajo nuestro ordenamiento procesal penal un acusado, juzgado, convicto y sentenciado **en ausencia** tiene derecho a acudir a un tribunal apelativo y cuestionar su convicción y sentencia.

---

[6]   En lo pertinente reza:

"a) **Delitos graves.** Si el acusado ha comparecido al acto de la lectura de la acusación, y habiendo sido advertido conforme a la Regla 58 y citado para juicio no se presentase, el tribunal luego de investigadas las causas, podrá celebrar el mismo en ausencia hasta que recayere fallo o veredicto y el pronunciamiento de la sentencia, **siempre que el acusado estuviere representado por abogado.**"

III

Aún así, según indicamos, el Tribunal de Circuito basó su sentencia desestimatoria en <u>Pueblo</u> v. <u>Rivera Rivera</u>, <u>supra</u>, pág. 545 (1980). Allí acogimos la doctrina federal establecida en <u>Smith</u> v. <u>U.S.</u>, 94 U.S. 97 (1876), a los efectos de que "[l]os fugitivos, **al menos mientras continúe su condición de tales**, renuncian su derecho a que una corte de apelación considere sus planteamientos sobre la base de una justicia que ellos han decidido burlar". Ese dictamen y los planteamientos reproducidos por el Procurador General, nos obligan a revisitar y aclarar la doctrina vigente.

<u>Smith</u> v. <u>U.S.</u>, <u>supra</u>, -primera ocasión en que el Tribunal Supremo federal desestimó una apelación basado en la evasión del **convicto apelante**-, respondió al interés de proteger la autoridad de los tribunales apelativos. Aclaró que si el convicto apelante, por estar evadido, no podía ser compelido a cumplir la sentencia, cualquier decisión era fútil, y por ende, el tribunal apelativo podía rehusar ver su recurso. El razonamiento expuesto fue el siguiente: "Si confirmamos la sentencia, con toda probabilidad no comparecerá a someterse a su condena. Si la revocamos y ordenamos un nuevo juicio, podría o no comparecer, según le convenga más a sus intereses." (Pág. 97). Traducción nuestra. Ordenó archivar ("left off the docket"), **a menos que el evadido se sometiera a la jurisdicción del tribunal antes de comenzar el próximo período de sesiones**. Esta doctrina fue reafirmada en apelaciones archivadas **si el convicto no aparecía en determinado período de tiempo**. <u>Eisler</u> v. <u>U.S.</u> 338 U.S. 189 (1949); <u>Allen</u> v. <u>Georgia</u>, 166 U.S. 138,(1897); <u>Bonahan</u> v. <u>Nebraska</u>, 125 U.S. 692 (1887). **En todas estas evasiones acaecidas durante el proceso apelativo permeó el interés de proteger la autoridad del tribunal apelativo en virtud de la teoría de la ejecutabilidad o cumplimiento ("enforceability theory")**[7]**, sin incidir en el debido proceso de ley.**

---

[7] Ello quedó meridianamente establecido en <u>Allen</u> v. <u>Georgia</u>, <u>supra</u>, pág. 141, al sostenerse que "[d]e lo contrario, se le coloca en posición de decirle al tribunal: 'acoja mi recurso y me entregaré, y correré el riesgo

Transcurrieron varias décadas. En <u>Molinaro</u> v. <u>N.J.</u>, 396 U.S. 365, (1970), por primera vez se desestimó una apelación **inmediatamente** al resolverse que, "[n]o existe razón persuasiva alguna por la cual este Tribunal deba proceder adjudicar en sus méritos un caso criminal **después que el convicto que ha solicitado revisión burle las restricciones impuestas conforme su convicción**. Aunque tal fuga no despoja el caso de su carácter de **caso o controversia** adjudicable, priva al convicto del derecho a valerse de los recursos del Tribunal para que se adjudiquen sus reclamos." (Pág. 366). (Traducción nuestra).

Este nuevo enfoque introdujo en el repertorio jurisprudencial la **doctrina de descalificación o privación**

**de derecho** ("disentitlement doctrine") como otro fundamento

para desestimar. Exige, que 1) el apelante haya sido convicto, 2) presentado en tiempo la apelación, y 3) **escape <u>después</u> de la convicción.** Permite a los tribunales apelativos, discrecionalmente, desestimar la apelación si el convicto no esta sujeto a responder.[8]

Poco después, en <u>Estelle</u> v. <u>Dorrough</u>, 420 U.S. 534 (1975), perpetuó su valor y efecto disuasivo, al validar una ley que autorizaba la desestimación automática si la evasión ocurría pendiente la apelación y, su reinstalación, si regresaba voluntariamente dentro de los diez (10) días desde la fuga.

Mientras tanto, en <u>State</u> v. <u>Holmes</u>, 680 F.2d 1372, 1373 (1982), el undécimo circuito extendió la norma de <u>Molinaro</u>, <u>supra</u> y desestimó una

---

de enfrentarme a un segundo juicio; niégame un nuevo juicio y abandonaré el Estado o permaneceré oculto para siempre". (Traducción nuestra).

[8] Bajo <u>Allen</u> v. <u>Georgia</u>, <u>supra</u>, y <u>Eisler</u> v. <u>U.S.</u>, <u>supra</u>, – desestimaciones basadas en la imposibilidad de hacer cumplir el dictamen del Tribunal– discrecionalmente diversos tribunales apelativos han emitido una amplia y variada gama de órdenes. <u>U.S.</u> v. <u>Gordon</u>, 538 F.2d 914 (1976); <u>U.S.</u> v. <u>Davis</u>, 625 F.2d 79 (1980); <u>U.S.</u> v. <u>Sotomayor</u>, 592 F.2d 1219 (1979); <u>U.S.</u> v. <u>Sperling</u>, 506 F.2d 1323 (1974); <u>U.S</u> v. <u>Shelton</u>, 482 F.2d 848 (1973).

No obstante, posterior a <u>Molinaro</u>, la mayoría de los tribunales se han negado a reinstalar apelaciones una vez el apelante evadido regresa a custodia. <u>Estrada</u> v. <u>U.S.</u>, 585 F.2d 742 (1978); <u>U.S.</u> v. <u>Smith</u>, 544 F.2d 832 (1977), <u>U.S.</u> v. <u>Shelton</u>, 508 F.2d 797(1975). Véase además, Grippando, <u>Fear of Flying–the Fugitive's Fleeting Right to a Federal Appeal</u>, Fordham Law Review, Vol. LIV, Núm. 5, pág. 661.

apelación de un evadido recapturado que **escapó después de convicción, pero antes de la sentencia.** El Tribunal resolvió que la norma aplicaba, independientemente de que la fuga ocurriera antes o después de radicada la apelación. Se fundó en que un **acusado que se evade después de convicción, pero antes de sentencia, renuncia su derecho a apelar, a menos que establezca que su ausencia se debió a causas ajenas a su voluntad.** Añadió que siendo la apelación de estirpe estatutaria, no constitucional, puede renunciarse al no radicarse a tiempo el escrito de apelación, o abandonándola al fugarse. **No obstante, exceptuó de tal renuncia el derecho a apelar de errores en la sentencia.** Dos años más tarde, en United States v. London, 723 F.2d 1538 (1984) dicho foro extendió aun más la norma al desestimar la apelación de un convicto, evadido durante el juicio y sentenciado **en ausencia.** Aunque distinguió el caso de los anteriores, determinó que la norma seguida en Holmes, regía la solución. "Sería anómalo sostener que Holmes perdió su derecho a apelar por evadirse después de convicción y que London lo conserva por que huyó durante el juicio". U.S. v. London, supra, pág. 1539. Concluyó que ambos descarrilaron ("disrupted") los procesos judiciales.

Aunque esos dos casos se fundamentan en la doctrina de Smith, Molinaro, y su jurisprudencia posterior, ignoraron que en esa ocasión, distinto a los anteriores, el apelante había sido recapturado, y estaba bajo el control y jurisdicción del tribunal, o sea, podía compelérsele a cumplir con el dictamen. Sin embargo, el Tribunal pareció indicar que la fuga per se, como **afrenta a los procesos judiciales**, era suficiente justificación para desestimar.

El Tribunal Supremo se negó a revisar Holmes y London.[9] Sin embargo, recientemente en Ortega Rodríguez v. U.S., 507 U.S. 234 (1993), tuvo ocasión de retomar la discusión y definir con mayor precisión los parámetros de la doctrina. Ortega Rodríguez fue convicto en el Tribunal de Distrito y no compareció a su sentencia. Recapturado, se le acusó de fuga

---

[9] United States v. Holmes, 460 U.S. 1015 (1983); United States v. London, 467 U.S. 1228 (1984).

y desacato. Se le impuso una condena a cumplirse después de la primera convicción. Inconforme, solicitó nueva sentencia y revocación de la convicción previa. El Tribunal de Distrito se negó a revocar la convicción, pero asintió resentenciarlo. Contra dicha sentencia, Ortega Rodríguez apeló. El Estado solicitó y el Tribunal de Circuito desestimó fundado en que Ortega Rodríguez se fugó **después de convicción y antes de su sentencia inicial**, por lo que, bajo Holmes, estaba impedido de apelar su convicción inicial. El Supremo Federal, en certiorari, revocó. Al examinar si la norma de Molinaro aplica a las apelaciones en que la fuga ocurre antes de invocarse y comenzar el proceso apelativo, –o sea, mientras el caso se ventila en instancia–, resolvió que no debía extenderse al extremo en que se extendió en Holmes y London. Señaló, que las justificaciones válidas para sancionar con desestimación, presuponen un **nexo entre la fuga y el proceso apelativo**. De no existir, tampoco existen tales justificaciones y, por lo tanto, no procede desestimar. Expuso así su razonamiento. Primero, **la teoría de la ejecutabilidad o cumplimiento** ("enforceability theory"), no procede si el apelante regresa a custodia, pues una vez en control del tribunal, se asegura el cumplimiento de la sentencia. Segundo, la eficiencia del proceso apelativo no se adelanta desestimando una apelación radicada después de la recaptura de la persona. Ante la preocupación de que la fuga puede distraer la atención de los méritos del caso, el Tribunal concluyó que esa distracción, de existir, es en el tribunal ante el cual se ventila el caso al momento de la fuga. Tercero, la desestimación de una apelación de un convicto, juzgado y sentenciado **en ausencia**, radicada después de su recaptura, tampoco protege la dignidad del tribunal apelativo, pues la afrenta fue contra el tribunal de instancia que ventilaba el caso al ocurrir la fuga. **Dicho tribunal tiene la autoridad para vindicarse a sí mismo.** El más alto foro federal insistió en que "[no] podemos aceptar que se amplíe este razonamiento de tal forma que se permita a un tribunal apelativo sancionar mediante desestimación **cualquier conducta irrespetuosa hacia algún aspecto del sistema judicial, aun cuando tal conducta no**

**guarde relación con el curso del procedimiento apelativo.**" (Traducción nuestra). <u>Ortega Rodríguez</u> v. <u>United States</u>, <u>supra</u>, pág. 246.

Finalmente, en cuanto al efecto disuasivo expuesto en <u>Estelle</u> v. <u>Dorrough</u>, <u>supra</u>, razonó que si la fuga ocurre durante la etapa apelativa, la desestimación podría tener algún efecto disuasivo, pues afectaría la apelación. Sin embargo, si es antes, la desestimación carece ni tiene efecto disuasivo alguno. **Atenerse a las consecuencias de la fuga ante el Tribunal de instancia —delito de fuga, desacato— son los mejores disuasivos a evadirse antes de iniciarse el proceso apelativo.** Concluyó:

> "Aunque la desestimación de una apelación en trámite mientras el acusado se ha dado a la fuga podría satisfacer intereses sustanciales, estos mismos intereses no respaldan una norma de desestimación para todas las apelaciones solicitadas por ex-prófugos que hayan sido nuevamente detenidos antes de haberse invocado la maquinaria apelativa. En ausencia de una relación entre la condición de prófugo de un acusado y su apelación, como es el caso cuando un acusado está prófugo durante 'el curso del proceso apelativo' [cita omitida] no serán aplicables, por lo general, las razones formuladas para justificar la desestimación de las apelaciones en trámite de los prófugos." (Traducción nuestra). Pág. 249.

En resumen, cuando el acusado es juzgado, convicto y sentenciado **en ausencia** la desestimación de su apelación no se justifica si no existe nexo entre su fuga y dicha apelación. Ahora bien, si se evade pendiente la apelación, subsiste la norma desestimatoria expuesta en <u>Molinaro</u> y demás casos.

Esa medida protege la autoridad y dignidad del foro apelativo; disuade contra evasiones luego de invocarse el proceso apelativo; promueve la eficiencia del proceso apelativo, y; constituye una advertencia que de evadirse, renuncia al derecho de que el tribunal apelativo adjudique sus reclamos. Igual justificación opera e, idéntico resultado se impone, cuando el convicto se evade **posterior a su sentencia** y es su representante legal quien radica el escrito de apelación.[10]

Sin embargo, si la evasión ocurre previo a activarse la maquinaria

---

[10] <u>Ortega Rodríguez</u> v. <u>United States</u>, <u>supra</u>, pág. 242, Nota al calce #12.

apelativa y no guarda relación con el proceso apelativo,[11] siempre que se radique en tiempo la apelación, no se justifica desestimar. En tales casos, el evadido oportunamente responderá ante el tribunal de instancia, por su desacato o fuga —mayor disuasivo que la desestimación de la apelación-, por su afrenta a dicho tribunal.[12]

IV

**En el caso que nos ocupa, Esquilín Díaz advino prófugo de la justicia** antes **del juicio. Conforme lo autorizan las reglas de procedimiento criminal vigentes, representado por abogado durante todas sus etapas, se celebró** juicio en ausencia, **fue convicto y sentenciado.** Su fuga no tuvo nada que ver ni tuvo relación alguna con el proceso apelativo. **Su abogada diligentemente radicó en tiempo el escrito de apelación por lo que Esquilín Díaz tiene derecho a que se reinstale su apelación. Este resultado no lo exime de responder ante el Tribunal de Primera Instancia por su conducta; de hecho, por no comparecer, fue acusado, convicto y sentenciado a cumplir por desacato a ese tribunal.**

**Honramos nuestro compromiso de hacer justicia sustancial**, no pro forma, **revocando el dictamen del Circuito de Apelaciones y ordenándole resolver en sus méritos la apelación.**


ANTONIO S. NEGRON GARCIA
Juez Asociado


---

[11] Es imperativo evaluar si tiene algún efecto perjudicial para el Estado, como lo sería la demora irrazonable de los procedimientos, dificultando la localización de testigos y demás elementos para relitigar el caso **de ordenarse un nuevo juicio.**

[12] Los casos citados por el Tribunal de Circuito de Apelaciones, aunque en efecto reiteran la norma adoptada en Pueblo v. Rivera Rivera, supra, tratan sobre hechos totalmente distintos a los de autos.

Pueblo ex rel H.L.V.D.J., supra, versó sobre la renuncia del tribunal de menores a su jurisdicción en ausencia del menor evadido. Orlando Torres Rosario v. Alcaide, supra y Alberto Toro Ruiz v. Junta de Libertad Bajo Palabra, supra, giraron en torno al derecho del convicto a estar presente en la vista donde se revocó su libertad a prueba por evadirse de la jurisdicción, incumpliendo así las condiciones de su probatoria.