ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br><br>v.<br><br><br>RAFAEL MIRANDA TOLENTINO, ÁNGEL RESTO MOJICA, & ORLANDO MOJICA<br><br>Apelantes | KLAN202400468 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>EOP2023E0010<br>EOP2023G0011<br>EVI2023G0006<br>EVI2023G0007<br>EVI2023G0008<br>EVI2023G0009<br>EVI2023G0025<br>EVI2023G0026<br><br>Sobre:<br>Art. 93a del Código Penal |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2024.

Comparecen los confinados Rafael Miranda Tolentino ("Miranda Tolentino"), Ángel Resto Mojica ("Resto Mojica") y Orlando Mojica Rodríguez ("Mojica Rodríguez") (en conjunto, "coacusados" o "Apelantes") mediante *Escrito de Apelación* y solicitan la revisión de las sentencias de culpabilidad emitidas el 15 de abril de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas ("TPI"). Mediante los referidos dictámenes, Resto Mojica y Miranda Tolentino fueron condenados a ciento dieciocho (118) años de prisión por los delitos de asesinato en primer grado tipificado en el Art. 93 (a) del Código Penal, 33 LPRA sec. 5142, y por el delito de conspiración, tipificado en el Art. 244 del Código Penal, 33 LPRA sec. 5334. A su vez, Mojica Rodríguez fue sentenciado a ciento dieciocho (118) años de prisión por los delitos de asesinato en primer grado.

Por los fundamentos que expondremos a continuación, se *Desestima* el recurso de apelación, respecto a Ángel Resto Mojica, por falta de

jurisdicción. Asimismo, se *Confirman* las sentencias apeladas, con relación a Rafael Miranda Tolentino y Orlando Mojica Rodríguez.

**I.**

Por hechos acontecidos el 18 de diciembre de 2012, que culminaron en la muerte a Jesús Díaz Ortiz y José Díaz Ortiz (en conjunto, "hermanos Díaz-Ortiz"), se presentaron sendas denuncias en contra de Miranda Tolentino, Resto Mojica y Mojica Rodríguez. Miranda Tolentino y Resto Mojica enfrentaron dos (2) cargos por violación al Artículo 93 (a) del Código Penal, *supra*, y; un (1) cargo por violación al Artículo 244 del Código Penal, *supra*. Por otra parte, Mojica Rodríguez enfrentó dos (2) cargos por violación al Artículo 93 (a) del Código Penal, *supra*.

Tras las correspondientes instancias procesales, el juicio por jurado se celebró los días 13, 14, 18 y 19 de diciembre de 2023, así como los días 11, 29 y 31 de enero de 2024 y los días 13, 15 y 22 de febrero de 2024. Durante el juicio, el Ministerio Público presentó como prueba de cargo a los siguientes testigos: (1) Diana Iris Díaz Ortiz ("señora Díaz Ortiz"), hermana de los difuntos; (2) Angie Hernaiz Rivera ("señora Hernaiz Rivera"), investigadora forense del Instituto de Ciencias Forenses ("ICF"); (3) Alexander Rosario De León ("Rosario De León"), coautor; (4) Dr. Javier G. Serrano Serrano ("Dr. Serrano"), patólogo forense; (5) Agte. Joely Vicente Cruz ("Agte. Vicente Cruz"), agente investigadora, y; (6) Anabigail Torres Cruz ("señora Torres Cruz"), de la Sección de Control y Custodia de Evidencia del ICF.

Aquilatada la prueba, el Jurado rindió un veredicto unánime de culpabilidad en contra de Miranda Tolentino, Resto Mojica y Mojica Rodríguez. Consecuentemente, el 22 de febrero de 2024, el foro de instancia dictó sentencia de ciento dieciocho (118) años de prisión en contra de los coacusados.

Inconformes, el 10 de mayo de 2024, los coacusados acudieron ante esta Curia mediante apelación. Los Apelantes señalaron la comisión de los siguientes errores:

**Erró el Honorable Tribunal de Primera Instancia al brindar instrucciones al Jurado que fueron confusas, imprecisas y erróneas, lo que hizo que el jurado incurriera en error al rendir el veredicto.**

**Erró el Honorable Tribunal de Primera Instancia al no brindar una instrucción oportuna al Jurado, de conformidad con la Regla 156 de las Reglas de Procedimiento Criminal.**

**Erró el Honorable Tribunal de Primera Instancia al no brindar una instrucción oportuna al Jurado sobre la alternativa que tienen como miembros del jurado de no tener que llegar a un acuerdo unánime, lo que provoca hung jury.**

**Erró el Honorable Tribunal de Primera Instancia al no brindar una instrucción oportuna al Jurado sobre el estado de indefensión.**

**Erró el Honorable Tribunal de Primera Instancia (Jurado) al emitir un fallo de culpabilidad contrario a derecho y a la prueba desfilada en juicio.**

**Erró el Honorable Tribunal de Primera Instancia (Jurado) al emitir un fallo de culpabilidad por delitos que no fueron probados más allá de duda razonable.**

**Erró el Honorable Tribunal de Primera Instancia al sentenciar a los Apelantes por delitos cuyos elementos no fueron probados por el Ministerio Público más allá de duda razonable.**

**Incurrió en conducta impropia el Ministerio Público al inducir a error al Jurado en su informe final, comentando prueba que no fue desfilada y estableciendo nuevas teorías que no fueron probadas en juicio.**

**Erró el Honorable Tribunal de Primera Instancia al no conceder un nuevo juicio bajo la Regla 188 de Procedimiento Criminal.**

Posteriormente, el 5 de septiembre de 2024, el Ministerio Público presentó una *Moción de Desestimación de Apelación de Ángel Luis Resto Mojica.* El Ministerio Público sostuvo que, Resto Mojica está prófugo de la justicia, y que, tanto el juicio, como la lectura de sentencia se celebraron en su ausencia. Por tanto, arguyó que, conforme a lo resuelto en *Pueblo v. Esquilín Díaz,* 146 DPR 808 (1998), se debe considerar que el convicto que permanezca evadido de la jurisdicción al momento de instar la apelación ha renunciado al derecho de que un tribunal apelativo considere sus planteamientos de error.

El 10 de septiembre de 2024, le concedimos a los Apelantes un término de diez (10) días para expresar su posición respecto a la solicitud de desestimación, so pena de conceder lo solicitado por el Ministerio Público. Por otra parte, el 15 de octubre de 2024, el Ministerio Público presentó su alegato en oposición. Transcurrido el término concedido a los Apelantes para oponerse a la solicitud de desestimación instada por el Ministerio Público, queda perfeccionado el recurso y procedemos a resolver.

**II.**

**-A-**

Como es sabido, la apreciación de la prueba que realiza el TPI en el ejercicio de su sana discreción está revestido de confiabilidad y merece nuestro respeto y deferencia. *Argüello v. Argüello,* 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987). En vista de lo anterior, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales. *Pueblo v. Santiago,* 176 DPR 133, 148 (2009); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000). Al respecto, nuestro más Alto Foro ha expresado lo siguiente:

> [...] no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación. *Pueblo v. Toro Martínez,* 200 DPR 834, 857 (2018), citando a *Ortiz v. Cruz Pabón,* 103 DPR 939, 947 (1995).

A esos efectos, el Tribunal Supremo de Puerto Rico ha resuelto que **un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto**. *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994) (Énfasis suplido).

En consecuencia, este Tribunal Apelativo no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción, o; (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002); *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991). De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble. *Pueblo v. Martínez Landrón,* 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra,* pág. 63. De manera que, este Tribunal solo podrá intervenir con la apreciación del foro juzgador si, luego de evaluar minuciosamente la prueba del caso, guardamos serias, razonables y fundadas dudas acerca de la culpabilidad del acusado. *Pueblo v. Casillas, Torres,* 190 DPR 398, 415-417 (2014).

**-B-**

La Constitución de Puerto Rico garantiza a toda persona acusada de delito el derecho fundamental a la presunción de inocencia. CONST. PR, Art. II, Sec. 11. *Pueblo v. Resto Laureano,* 206 DPR 963, 967 (2021); *Pueblo v. De Jesús Mercado,* 188 DPR 467, 475 (2013). Además, la Regla 304 de Evidencia, 32 LPRA Ap. VI, R. 304 (1), ha incorporado este imperativo constitucional. Asimismo, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, reitera el precitado derecho fundamental: *"[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. [...]".* A su vez, dicha norma constituye uno de los imperativos del debido proceso de ley al exigir que una persona acusada en un proceso criminal se presuma inocente, mientras no se demuestre lo contrario. *Pueblo v. Irizarry, supra,* pág. 786. *Pueblo v. León Martínez,* 132 DPR 746, 764 (1993). Para rebatir tal presunción, nuestro ordenamiento requiere que

el Estado establezca la culpabilidad una persona imputada de delito más allá de duda razonable. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146 (2020). *Pueblo v. Toro Martínez, supra*, págs. 855-85; *Pueblo v. Cabán Torres*, 117 DPR 645, 652 (1986). En otras palabras, se exige un *quantum* probatorio de más allá de duda razonable para controvertir la presunción de inocencia. *Pueblo v. Santiago, supra*, pág. 142.

El concepto de "duda razonable" implica necesariamente aquella que produce insatisfacción o intranquilidad en la conciencia del juzgador respecto a la evidencia presentada en el caso. *Pueblo v. Irizarry, supra*, pág. 788. Sobre este requisito, el Tribunal Supremo ha reiterado que:

> El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; se le requiere que la misma sea "suficiente en derecho". Ello significa que la evidencia presentada, "además de suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido [...] Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada". *Pueblo v. De Jesús Mercado, supra*, pág. 476, citando a *Pueblo v. Cabán Torres, supra.*

Por lo tanto, el *quantum de más allá de duda razonable* aplica para "*cada uno de los elementos del delito, la conexión de estos con el acusado y la intención o negligencia de éste*". *Íd., Pueblo v. Santiago, supra.* A su vez, se ha resuelto que:

> La determinación de que cierta prueba es suficiente para demostrar la culpabilidad del acusado más allá de duda razonable es una cuestión de raciocinio, producto de un análisis de todos los elementos de juicio del caso y no una mera duda especulativa o imaginaria. *Pueblo v. De Jesús Mercado, supra,* págs. 475-476.

**-C-**

Las instrucciones al Jurado constituyen "*el mecanismo procesal mediante el cual los miembros del Jurado toman conocimiento del derecho aplicable al caso*". *Pueblo v. Rodríguez Vicente,* 173 DPR 292, 297 (2008). Nuestro más Alto Foro ha enfatizado que, para que el Jurado pueda desempeñar dicha función, "*los miembros del mismo - que, de ordinario, son completamente legos en la materia - deben ser instruidos adecuadamente*"

*sobre el derecho aplicable por el magistrado que preside el proceso*". *Pueblo v. Lorio Ormsby I*, 137 DPR 722, 727 (1994), citando a *Pueblo v. Bonilla Ortiz*, 123 DPR 434, 439 (1989). Ello, asegura que el desenlace del proceso adversativo esté guiado por el derecho y los hechos. *Pueblo v. Rodríguez Vicente, supra*, págs. 297-298. Como corolario, toda instrucción al jurado deberá ser balanceada, clara, directa y no repetitiva. *Pueblo v. Mattei Torres*, 121 DPR 600 (1988).

En términos generales, el acusado tiene el derecho a que se informe al Jurado de todos los aspectos del Derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad. *Pueblo v. Negrón Ayala*, 171 DPR 406, 414 (2007). Entre los distintos aspectos que deben incluirse en las instrucciones al Jurado se encuentran los elementos del delito imputado y, si la prueba así lo justifica, los elementos de los delitos inferiores al imputado o que estén comprendidos dentro de éste. Además, el tribunal deberá hacer hincapié en que el Ministerio Fiscal tiene la obligación de establecer todos los elementos del delito más allá de duda razonable. *Pueblo v. Rosario*, 160 DPR 592, 604-605 (2003).

La Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II, R. 137, provee para que el Ministerio Público y la defensa soliciten instrucciones especiales al foro de instancia. Particularmente, la precitada regla dispone lo siguiente:

> **Cualquiera de las partes podrá presentar al tribunal una petición escrita de que se den determinadas instrucciones**, al terminar el desfile de la prueba, o anteriormente si el tribunal razonablemente así lo ordena. Deberá servirse copia de dicha petición a la parte contraria. El tribunal podrá aceptar o rechazar cualquiera o todas dichas peticiones, anotando debidamente su decisión en cada una, e informará a las partes de su decisión antes de que estas informen al jurado. **Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales** antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. [...] *Íd.*

(Énfasis suplido)

Así, pues, la precitada regla, *supra*, *"impide que se alegue error en instrucciones no objetadas ni solicitadas"*. *Pueblo v. Velázquez Caraballo*, 110 DPR 369, 372 (1980). No obstante, *"si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, "lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente"*. [Citas omitidas]. *Pueblo v. Ortiz Martínez*, 116 DPR 139, 151 (1985). Ante una apelación impugnando las instrucciones impartidas a un Jurado, hay que considerar las instrucciones en conjunto para determinar su corrección o incorrección. *Pueblo v. Dómenech Meléndez*, 98 DPR 64, 68 (1969).

Finalmente, el Tribunal Supremo ha sostenido reiteradamente que el uso del *Libro de Instrucciones al Jurado* constituye la mejor práctica, ya que les cobija una presunción de corrección y no pueden ser impugnadas en ausencia de una demostración real de que, en efecto, la instrucción es errónea. *Pueblo v. Ortiz González*, 111 DPR 408 (1981).

**-D-**

La Regla 144 de Procedimiento Criminal, 32 LPRA Ap. II, R. 144, establece que, antes del veredicto, el tribunal podrá ordenar la disolución del Jurado en determinadas circunstancias. Particularmente, el inciso (d) de la referida regla contempla que *"[s]i se hubiere cometido algún error o se hubiere incurrido en alguna irregularidad durante el proceso que, a juicio del tribunal, le impidiere al jurado rendir un veredicto justo e imparcial"*, el tribunal podrá ordenar la disolución del Jurado. *Íd.*

Según nos explica el Profesor Chiesa, *"[e]sta regla constituye el vehículo estatutario para hacer valer el derecho del acusado a la terminación del juicio cuando la continuación es incompatible con el concepto de 'jurado imparcial', componente esencial del derecho constitucional a juicio por jurado"*. E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, 1995, Editorial Forum, pág. 227.

El Tribunal Supremo ha resuelto que:

> [C]omo norma general y en circunstancias ordinarias, una instrucción oportuna y específica al Jurado por parte del magistrado que preside los procedimientos puede subsanar el efecto perjudicial que sobre el Jurado pudiera tener la admisión errónea de evidencia o los comentarios impropios provenientes de un testigo de cargo o del representante del Ministerio Fiscal. *Pueblo v. Robles González*, 125 DPR 750, 759-760 (1990).

De igual manera, la conducta impropia del fiscal durante su informe final no necesariamente amerita la disolución del Jurado, ya que usualmente bastará con que el tribunal amoneste al Ministerio Público e imparta instrucciones al Jurado para subsanar la irregularidad. Chiesa Aponte, *op. cit.*

**-E-**

El estado de derecho vigente autoriza al tribunal a conceder un nuevo juicio, luego de dictado un fallo de culpabilidad ya sea a instancia propia con el consentimiento del acusado o a solicitud de este. Regla 187 de Procedimiento Criminal, 34 LPRA Ap. II, R. 187. Por su parte, la Regla 188 de Procedimiento Criminal, 34 LPRA Ap. II, R. 188, decreta los fundamentos bajo los cuales el tribunal podrá conceder un nuevo juicio. Atinente al caso de autos, la referida regla, *supra*, dispone que el tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:

> (c) Que el veredicto o fallo es contrario a derecho o a la prueba.
> (d) Que medió cualquiera de las siguientes circunstancias y como consecuencia se perjudicaron los derechos sustanciales del acusado:
> [...]
> > (4) Que el fiscal incurrió en conducta impropia.
> > (5) Que el tribunal erró al resolver cualquier cuestión de derecho surgida en el curso del juicio, o instruyó erróneamente al jurado sobre cualquier aspecto legal del caso o se negó erróneamente a dar al jurado una instrucción solicitada por el acusado.
> [...]
> (f) El tribunal, además, concederá un nuevo juicio cuando, debido a cualquier otra causa de la cual no fuere responsable el acusado, este no hubiere tenido un juicio justo e imparcial.

A su vez, las Reglas de Procedimiento Criminal estipulan que, por lo general, la solicitud de nuevo juicio deberá presentarse antes de que el tribunal dicte sentencia. Regla 189 de Procedimiento Criminal, 34 LPRA Ap. II, R. 189.

El Tribunal Supremo ha establecido que, la concesión de nuevo juicio descansa en la sana discreción del tribunal sentenciador y que dicha determinación no debe alterarse, a menos que se demuestre un claro e inequívoco abuso de discreción. *Pueblo v. Ortiz Colón*, 207 DPR 100, 109 (2021). Por consiguiente, los foros revisores no alterarán la actuación del foro recurrido a menos que se demuestre un claro e inequívoco abuso de esa discreción. *Pueblo v. Díaz Morales*, 170 DPR 749, 766 (2007).

**III.**

Antes de dilucidar los señalamientos de errores, atenderemos la solicitud de desestimación presentada por el Ministerio Público, por encontrarse en controversia la jurisdicción de esta Curia sobre el recurso apelativo radicado a nombre de Resto Mojica. El Ministerio Público señala que, dado a que Resto Mojica se encuentra prófugo de la justicia y que, como consecuencia, no estuvo presente durante el juicio o la lectura de sentencia, este foro apelativo intermedio carece de jurisdicción para atender el recurso apelativo instado por el convicto. Particularmente, el Ministerio Público arguye que, nuestro Máximo Foro ha sido enfático al resolver que, "*una vez el convicto se evade de la jurisdicción y permanece evadido al momento de instar la apelación, debe considerarse que ha renunciado al derecho de que un tribunal apelativo considere sus planteamientos de error*". *Pueblo v. Esquilín Díaz*, 146 DPR 808, 825 (1998).

El 10 de septiembre de 2024, le concedimos a los Apelantes un término de diez (10) días para presentar su oposición a la solicitud de desestimación, so pena de conceder lo solicitado por el Apelado. En vista de que los Apelantes incumplieron con lo ordenado y en aras de que el convicto permanece evadido de la jurisdicción del tribunal, resta desestimar el recurso de *Apelación*, únicamente respecto a Resto Mojica.

Ahora bien, corresponde atender los errores planteados por Miranda Tolentino y Mojica Rodríguez. Los Apelantes sostienen que, el foro primario incidió al: (1) brindarle al Jurado instrucciones confusas, imprecisas y erróneas; (2) no ofrecerle, de manera adecuada, una instrucción al Jurado

respecto al testimonio del coautor; (3) no proveerle al Jurado una instrucción sobre la alternativa de no tener que llegar a un acuerdo unánime; (4) no impartirle al Jurado una instrucción oportuna acerca del estado de indefensión; (5) emitir un fallo de culpabilidad contrario a derecho y a la prueba desfilada; (6) dictar un fallo de culpabilidad por delitos que no fueron probados más allá de duda razonable; (7) sentenciar a los coacusados por delitos cuyos elementos no fueron probados más allá de duda razonable; (8) permitir que el Ministerio Público incurriera en conducta impropia durante su informe final, y; (9) no conceder un nuevo juicio.

Los errores primero, segundo, tercero y cuarto serán discutidos de manera conjunta, por entender que están intrínsicamente relacionados, toda vez que impugnan las instrucciones impartidas al Jurado. En específico, los Apelantes alegan que, el foro apelado erró al: (1) brindar instrucciones confusas, imprecisas y erróneas; (2) no ofrecer de manera adecuada una instrucción sobre el testimonio del coautor, previo a que el Jurado escuchara su testimonio; (3) no modificar la Instrucción 4.12 del *Libro de Instrucciones al Jurado*, conforme solicitado, y; (4) no impartir una instrucción sobre el estado de indefensión.

Nuestro Máximo Foro ha resuelto que, el uso del *Libro de Instrucciones al Jurado* constituye la mejor práctica, ya que les cobija una presunción de corrección y no pueden ser impugnadas en ausencia de una demostración real de que, en efecto, la instrucción es errónea. *Pueblo v. Ortiz González, supra.* Examinada la transcripción de la prueba oral ("TPO"), hemos constatado que, el tribunal le impartió las instrucciones al Jurado, de conformidad con las Reglas de Procedimiento Criminal y el *Libro de Instrucciones al Jurado*. El foro de instancia no venía obligado a brindarle al Jurado instrucciones adicionales a las contempladas por el *Libro de Instrucciones al Jurado,* contrario a lo sostenido por los Apelantes.

A su vez, debemos aclarar que, ni las Reglas de Procedimiento Criminal, como tampoco el *Libro de Instrucciones al Jurado* contemplan la

posibilidad de que el tribunal le transmita una instrucción al Jurado sobre el estado de indefensión del acusado. El estado de indefensión es un asunto de derecho cuya determinación no le corresponde al Jurado, como juzgador de los hechos, sino al TPI. Por tanto, no le competía al foro primario impartir instrucciones al Jurado sobre un asunto que no se encontraba ante su adjudicación.

Por otro lado, la Instrucción 26.2 del *Libro de Instrucciones al Jurado* es clara respecto a la instrucción que le debe brindar el tribunal al Jurado sobre el veredicto por unanimidad. A tales efectos, la referida instrucción dispone que el foro primario deberá indicarle al Jurado que *"[p]ara que sea válido un veredicto, tiene que ser unánime"*. Conforme surge de la TPO, el Juez impartió al Jurado la Instrucción 26.2 conforme exige el *Libro de Instrucciones.*[1]

Del mismo modo, la Instrucción 4.12 del *Libro de Instrucciones al Jurado*, expone lo siguiente:

> En este caso el Ministerio Público presentó, como testigo de cargo, a una persona que alegadamente participó voluntaria e intencionalmente en la comisión del delito por el cual se está juzgando a la persona acusada. Debido a su supuesta participación en el acto delictivo, el (la) testigo de cargo está sujeto(a) a ser procesado(a) o encausado(a) por el mismo delito que la persona acusada aquí.
>
> Por esta razón, su testimonio debe examinarse con desconfianza. Ustedes darán el peso y la credibilidad que les merezca luego de examinar su testimonio con cautela juntamente con toda la evidencia presentada en el caso.

A su vez, la Regla 156 de Procedimiento Criminal, 34 LPRA Ap. II, R. 156, dispone que:

> El testimonio de un coautor o del cooperador será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al jurado instrucciones a esos efectos.

Nada exige que la instrucción sobre el testimonio del coautor sea impartida previo a que este se siente a testificar. Por consiguiente, el foro primario cumplió con lo exigido por las Reglas de Procedimiento Criminal y

---

[1] Véase, TPO del 15 de febrero de 2024, págs. 172-176.

el *Libro de Instrucciones al Jurado* al instruirle al Jurado que el testimonio de Rosario De León debía ser examinado con desconfianza, antes de que se fueran a deliberar.[2] Por tanto, somos del criterio que, los errores primero, segundo, tercero y cuarto no fueron cometidos, toda vez que el TPI le ofreció las instrucciones al Jurado conforme a derecho.

Mediante los errores, quinto, sexto y séptimo los Apelantes aducen que el Ministerio Público no probó su culpabilidad más allá de duda razonable. En específico, los Apelantes alegan que el testimonio del presunto coautor, Rosario De León fue contradictorio y no fue corroborado por la prueba desfilada durante el juicio.

Por su parte, el Ministerio Público arguye que, la evidencia documental y testifical presentada fue suficiente para demostrar la culpabilidad de los acusados más allá de duda razonable. Respecto a las alegadas contradicciones presentes durante el testimonio de Rosario De León, el Ministerio Público sostiene que, le corresponde al juzgador de los hechos evaluar la credibilidad de un testigo, a base de la totalidad de las circunstancias. Además, aduce que, lo relatado por el coautor fue corroborado mediante el testimonio de los demás testigos de cargo.

En el caso de epígrafe, fue el Jurado quien estuvo en mejor posición para evaluar la credibilidad de los testigos de cargo y la prueba desfilada durante el juicio. Aquilatada la prueba oral y tomando en consideración que el Jurado escudriñó directamente los testimonios presentados durante el juicio, consideramos impropio intervenir con su apreciación de los hechos. Conforme al crisol doctrinario aquí expuesto, la determinación de culpabilidad que hace el juzgador de los hechos es merecedora de una gran deferencia por parte del tribunal apelativo, salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto. Esto, ya que, el Jurado fue quien tuvo la oportunidad de recibir y apreciar la prueba testifical presentada.

---

[2] Véase, TPO del 15 de febrero de 2024, págs. 160-161.

No obstante, para un cabal entendimiento, incluimos un resumen de la prueba oral más relevante que se desfiló ante el Jurado y que este Panel cuidadosamente examinó.

El primer testimonio presentado por el Ministerio Público fue el de **Diana Iris Díaz Ortiz**, hermana de las víctimas.[3] La señora Díaz Ortiz declaró que, el 18 de diciembre de 2012, al recibir una llamada, fue a la PR-30 en donde vio a agentes y el cadáver de su hermano, Juan José.[4] Testificó que, al día siguiente, Juan José falleció en el hospital.[5] Además, relató que, identificó los cuerpos de sus hermanos en el ICF.[6] A su vez, afirmó, que sus hermanos trabajaban en el garaje Total, cuyo dueño era conocido como Aramburu.[7] Por último, testificó que, el 18 de diciembre de 2012, Juan José se encontraba de turno en el garaje.[8]

Como segundo testigo de cargo, el Ministerio Público presentó a **Angie Hernaiz Rivera**, investigadora forense del ICF.[9] La señora Hernaiz Rivera relató durante el **directo** que, el 18 de diciembre de 2012, se presentó en la escena del crimen.[10] Sobre la evidencia recopilada en la escena, señaló que, se ocuparon veintidós (22) casquillos de 7.62 x 39 mm entre el paseo y el pavimento de la vía de rodaje, y dos calibre 45 en el interior del Corolla.[11] A su vez, testificó que se encontró en el piso, entre el asiento del conductor y la puerta del vehículo, una pistola Glock negra calibre 45 y un magazín con once (11) balas calibre 45 sin disparar.[12] Asimismo, narró que, el cadáver de Juan José se encontraba en el asiento del conductor, mientras que Jesús se encontraba herido en el asiento del pasajero.[13] Detalló que, la evidencia ocupada en la escena, junto a una muestra de sangre recopilada

---

[3] Véase, TPO del 13 de noviembre de 2023, pág. 48.
[4] Véase, TPO del 13 de noviembre de 2023, págs. 48-51.
[5] Véase, TPO del 13 de noviembre de 2023, pág. 53-55.
[6] Véase, TPO del 13 de noviembre de 2023, pág. 54-55.
[7] Véase, TPO del 13 de noviembre de 2023, pág. 57.
[8] Véase, TPO del 13 de noviembre de 2023, pág. 57.
[9] Véase, TPO del 13 de noviembre de 2023, págs. 80.
[10] Véase, TPO del 13 de noviembre de 2023, págs. 90.
[11] Véase, TPO del 13 de noviembre de 2023, pág. 103.
[12] Véase, TPO del 13 de noviembre de 2023, pág. 104.
[13] Véase, TPO del 13 de noviembre de 2023, págs. 105-107.

del asiento del pasajero fueron enviadas al ICF para el análisis correspondiente.[14]

Durante el **contrainterrogatorio**, añadió que, en el área del paseo de la extrema derecha encontró diecinueve (19) casquillos.[15] En lo aquí pertinente, testificó que, la foto **4J** mostraba perforaciones e impactos en el cristal delantero, del lado del pasajero frontal. A su vez, declaró que la foto **4C** reflejaba perforaciones del cristal de frente, en el lado izquierdo del pasajero.[16]

Por otra parte, el Ministerio Público presentó el testimonio del coautor, **Alexander Rosario De León**, quien declaró sobre los hechos acontecidos el 18 de diciembre de 2012. El testigo relató que, mientras se encontraba reunido junto a Mojica Rodríguez y Miranda Tolentino en la residencia de Resto Mojica, este último les indicó que un individuo, identificado como Randy La Baba, lo había contactado para que mataran a unos hermanos.[17] Rosario De León testificó que, como acto seguido, recolectaron sus armas de fuego y se dirigió junto a Miranda Tolentino y Mojica Rodríguez, en una Laredo blanca manejada por este, hacia el garaje de gasolina donde trabajaban los occisos, ubicado en Caguas.[18] A su vez, expresó que, Resto Mojica, acompañado de un individuo a quien no logró identificar, también se dirigió al lugar, en una Outlander vino.[19]

Rosario De León continuó relatando que, una vez llegaron al garaje, identificaron el Corolla, perteneciente a los hermanos Díaz-Ortiz, mediante la descripción que les fue provista.[20] Añadió que, estacionados frente al lugar, una van blanca los divisó y, como consecuencia, intercambiaron de vehículo con Resto Mojica.[21] Entonces, narró que, ahora conduciendo la Outlander, Rosario De León, Mojica Rodríguez y Miranda Tolentino regresaron al garaje y, tan pronto observaron que el Corolla comenzó a

---

[14] Véase, TPO del 14 de noviembre de 2023, págs. 30-33.
[15] Véase, TPO del 13 de diciembre de 2023, pág. 31.
[16] Véase, TPO del 13 de noviembre de 2023, págs. 52-54.
[17] Véase, DPO del 18 de contrainterrogatorio de 2023, págs. 122-123.
[18] Véase, TPO del 18 de diciembre de 2023, págs. 124-125.
[19] Véase, TPO del 18 de diciembre de 2023, pág. 127.
[20] Véase, TPO del 18 de diciembre de 2023, págs. 128-129.
[21] Véase, TPO del 18 de diciembre de 2023, págs. 129-130.

moverse, empezaron a perseguirlo por el expreso, en dirección hacia el Turabo.[22] Puntualizó que, al acercarse, Mojica Rodríguez y Miranda Tolentino comenzaron a dispararle al vehículo de los hermanos Díaz-Ortiz.[23] Asimismo, reseñó que, comenzaron a recibir disparos provenientes del auto manejado por las víctimas.[24] Detalló que, al percatarse de que en la distancia había una patrulla de policías, partieron del lugar.[25]

De regreso en la residencia de Resto Mojica, declaró que, observaron que la Outlander tenía impactos de bala por el lado del pasajero.[26] A su vez, aseveró que, Randy La Baba llegó a la residencia, en donde le regaló una pistola 45, a Miranda Tolentino un AK-47, y a Resto Mojica y Mojica Rodríguez les regaló una Glock 19mm con *adapter* para convertirlas en rifles, además, les hizo entrega de $4,000.00 a él, Miranda Tolentino, Resto Mojica y Mojica Rodríguez.[27]

Como cuarto testigo de cargo, el Ministerio Público presentó al **Dr. Javier G. Serrano Serrano**, patólogo forense quien realizó las autopsias de los hermanos Díaz-Ortiz.[28] El Dr. Serrano detalló los hallazgos de las autopsias realizadas a los hermanos Díaz-Ortiz. Precisó que, Juan José tenía ocho (8) heridas de bala, predominantemente en el aspecto posterior del tronco del cuerpo, mientras que Jesús tenía nueve heridas de bala en su cuerpo.[29] Además, respecto a la trayectoria de las heridas de los hermanos Díaz-Ortiz, aseveró que, sugerían que venían de dos direcciones, unas de izquierda a derecha y otras de derecha a izquierda.[30]

El quinto testigo de cargo fue la **Agte. Joely Vicente Cruz**, agente investigadora. Durante el directo, la Agte. Vicente Cruz relató que, el caso se le fue asignado en el 2019, tras la muerte de la Agte. Nixa Labrador.[31] Testificó que, entrevistó a Rosario De León, quien le narró los hechos

---

[22] Véase, TPO del 18 de diciembre de 2023, pág. 133.
[23] Véase, TPO del 18 de diciembre de 2023, págs. 136-137.
[24] Véase, TPO del 18 de diciembre de 2023, pág. 137.
[25] Véase, TPO del 18 de diciembre de 2023, pág. 139.
[26] Véase, TPO del 18 de diciembre de 2023, pág. 140.
[27] Véase, TPO del 18 de diciembre de 2023, págs. 143-144.
[28] Véase, TPO del 29 de enero de 2024, pág. 30.
[29] Véase, TPO del 29 de enero de 2024, págs. 32-38.
[30] Véase, TPO del 29 de enero de 2024, pág. 66.
[31] Véase, TPO del 29 de enero de 2024, págs. 110-112.

acontecidos el 18 de diciembre de 2012.[32] Indicó que, Rosario De León le expresó que, estando en la casa de Resto Mojica, este les encomendó hacer una "vuelta". Asimismo, testificó que, Rosario De León le había indicado que salieron armados en una Laredo para realizar una vuelta, cuyo propósito era asesinar a dos hermanos que trabajaban en el garaje de gasolina ubicado después de la Universidad del Turabo. Narró que, el coautor le detalló que, vieron en el garaje de gasolina el Corolla que les fue descrito, pero que, luego los vio una van blanca y tuvieron que intercambiar de vehículo con Resto Mojica. La Agte. Vicente Cruz continuó detallando como Rosario De León le contó que, una vez vieron al Corolla moverse, comenzaron a perseguirlo y que, una vez pasaron la salida del Expreso Chayanne, le dijo a Mojica Rodríguez y Miranda Tolentino que se pusieran "*ready*". Añadió que, Rosario De León le narró como, una vez se pegó al Corolla y Mojica Rodríguez y Miranda Tolentino comenzaron a disparar, vio un fogonazo salir del Corolla, por lo que, frenó y el vehículo de los occisos le pasó por el frente. Entonces, abundó que, el coautor le relató la manera en que, nuevamente, se pegaron al Corolla, dispararon por segunda vez y regresaron a la residencia de Resto Mojica porque vieron un policía. Puntualizó, además, que Rosario De León le indicó que, Randy La Baba llegó a la residencia, donde les entregó dinero y armas.[33]

Durante el **contrainterrogatorio,** la Agte. Vicente Cruz, utilizando la foto 4C y el certificado de análisis de trayectoria, expresó sobre la trayectoria de las perforaciones en el cristal delantero del Corolla que tenían trayectoria de adentro hacia afuera.[34] En el **redirecto**, la agente investigadora precisó que, dicho análisis de trayectoria era compatible con lo narrado por Rosario De León, acerca de que le dispararon al Corolla de frente y por ambos lados.[35]

---

[32] Véase, TPO del 29 de enero de 2024, pág. 114.
[33] Véase, TPO del 29 de enero de 2024, págs. 117-123.
[34] Véase, TPO del 31 de enero de 2024, pág. 89.
[35] Véase, TPO del 31 de enero de 2024, pág. 120.

Finalmente, el Ministerio Público presentó el testimonio de **Anabigail Torres Cruz**, quien trabajaba en la Sección de Control y Custodia de Evidencia del ICF.[36] La señora Torres Cruz testificó a los efectos de indicar que recibió la evidencia recopilada en la escena y que, luego de analizada, la devolvió a la Agte. Vicente Cruz.[37] De igual manera, recalcó que, le entregó a la Agte. Vicente Cruz la evidencia obtenida en las autopsias.[38]

El Jurado, quien estuvo en mejor posición que este foro apelativo, le concedió entera credibilidad a la prueba testifical y documental vertida durante el juicio. Recalcamos, además que, el Art. 92 del Código Penal define "asesinato" como *"dar muerte a un ser humano a propósito, con conocimiento o temerariamente"*. 33 LPRA sec. 5141. A su vez, el Art. 93 (a) del Código Penal establece que constituye asesinato en primer grado *"[t]odo asesinato perpetrado por medio de veneno, acecho, tortura, estrangulamiento, sofocación o asfixie posicional, o a propósito o con conocimiento"*. 33 LPRA sec. 5142. Igualmente, el Art. 244 del Código Penal, 33 LPRA sec. 5334, estipula que *"[c]onstituye conspiración, el convenio o acuerdo, entre dos o más personas para cometer un delito y han formulado planes precisos respecto a la participación de cada cual, el tiempo y el lugar de los hechos"*. Del testimonio presentado, el Jurado determinó que no existía duda razonable respecto a la culpabilidad de los coacusados, así como los elementos de los delitos de conspiración y asesinato en primer grado. Por todo lo cual, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con su apreciación de la prueba.

Por otra parte, el octavo señalamiento de error va dirigido a impugnar la actuación del Ministerio Público durante su informe final. Los Apelantes alegan que el Ministerio Público incurrió en conducta impropia, al comentar prueba que no fue desfilada y al establecer nuevas teorías que no fueron probadas en juicio. Particularmente, señalan que, durante su informe final, el Fiscal interpretó que la prueba demostraba que, los disparos del cristal

---

[36] Véase, TPO del 31 de enero de 2024, pág. 43.
[37] Véase, TPO del 31 de enero de 2024, pág. 50.
[38] Véase, TPO del 31 de enero de 2024, pág. 55.

delantero del Corolla pudieron haber correspondido a disparos que entraron por la parte trasera del vehículo. Sin embargo, los Apelantes aducen que, la interpretación del Ministerio Público no estuvo fundamentada en la prueba desfilada durante el juicio.

En oposición, el Ministerio Público sostiene que, la interpretación realizada por el Fiscal estuvo basada en la evidencia testifical y documental presentada. A su vez, argumenta que, surge de la prueba que se suscitaron distintas ráfagas de disparos las cuales pudieron haber salido por la parte delantera del vehículo, en la alternativa, también pudieron ser producto de los disparos que atravesaron los cuerpos de los occisos.

Según surge de la TPO, el comentario del Fiscal fue objetado de manera oportuna por el abogado de defensa. Evaluada la objeción, el foro apelado permitió el comentario, al resolver que dicha interpretación surgía de la prueba admitida y presentada durante el juicio.[39] A tales efectos, el Tribunal Supremo ha sido enfático al resolver que:

> [...] en sus informes finales al jurado, el representante del ministerio público y el abogado defensor pueden comentar la evidencia presentada y tienen amplia libertad para hacer conclusiones, inferencias, deducciones y argumentos derivados de la misma. No importa que dichas conclusiones, inferencias, deducciones y argumentos sean improbables, ilógicos, erróneos o absurdos. Cualquier argumento basado en la evidencia normalmente es propio y el requisito de que exista base en la evidencia se interpreta muy liberalmente. *Pueblo v. Suárez Fernández*, 116 DPR 842, 851 (1986), citando a *Pueblo v. Fournier*, 80 DPR 390, 407-408 (1958).

En otras palabras, durante sus informes finales, el Ministerio Público, al igual que el abogado de defensa, podrán realizar interpretaciones basadas en la prueba admitida. Así, pues, examinado el comentario y su correspondiente objeción, a la luz de la jurisprudencia aquí identificada, no encontramos razón para interferir con el criterio del foro de instancia. Surge con claridad que, las interpretaciones del Fiscal durante su informe final estuvieron fundamentadas en la prueba documental y testifical vertida durante el juicio. Resulta forzoso concluir que el Ministerio Fiscal no

---

[39] Véase, TPO del 15 de febrero de 2024, págs. 30-32.

incurrió en conducta impropia o que tales comentarios indujeron a error al Jurado.

Por último, mediante el noveno error señalado, los Apelantes le imputan al foro primario haber incidido al no conceder un nuevo juicio bajo la Regla 188 de Procedimiento Criminal, *supra*. De manera particular, aducen que, de haberse cometido los errores señalados en el recurso de epígrafe, el TPI venía obligado a conceder un nuevo juicio. En aras de que esta Curia no encontró fundamento alguno para determinar que el foro primario cometió los errores previamente señalados, el último error no amerita discusión.

**IV.**

Por los fundamentos que anteceden, se desestima el recurso de apelación, en cuanto a Ángel Resto Mojica, por falta de jurisdicción. Por otra parte, se *Confirma* la *Sentencia* apelada, con relación a Rafael Miranda Tolentino y Orlando Mojica Rodríguez.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones